### JOHN MURPHY & wife *vs.* LEWIS B. DEANE & others.

A pair of skids were laid over and across a sidewalk, from a wagon in the carriageway, into the door of a warehouse. A woman, passing along the sidewalk with a basket on one arm, attempted to cross over the skids, although she saw that the wagoner with two other men was preparing to roll a heavy cask of oil from the wagon down the skids into the warehouse. She had lifted one of her feet over or upon the skids, when one of the three men slipped from his footing, and the cask escaped from their control and rolled down upon and maimed her. In an action against the employers of the wagoner to recover damages for her injury as having been caused by his negligence, she asked for rulings: 1. "That the question for the jury was, whether the injury was occasioned entirely by the negligence or improper conduct of the defendants' servant, or whether the plaintiff herself so far contributed to the misfortune, by her own negligence, or want of ordinary and common care and caution, that but for such negligence or want of ordinary care and caution on her part, the misfortune would not have happened, — that in the first case the plaintiff would be entitled to recover, and in the second she would not;" and 2. "That mere negligence, or want of ordinary care or caution, will not disentitle the plaintiff to recover, unless it be such that, but for that negligence, or want of ordinary care and caution, the misfortune could not have happened, nor if the defendants might, by the exercise of care on their part, have avoided the consequences of the neglect or carelessness of the plaintiff." *Held*, that the rulings requested were not the correct rule of law which governs ordinary cases of injury by negligence; but "whenever there is negligence on the part of the plaintiff contributing directly, or as a proximate cause, to the occurrence from which the injury arises, such negligence will prevent the plaintiff from recovery, and the burden is always upon the plaintiff to establish either that he himself was in the exercise of due care, or that the injury is in no degree attributable to any want of proper care on his part;" and that, if the judge submitted the case to the jury with sufficient instructions in conformity with the correct rule thus stated, the plaintiff had no ground of exception.

TORT. The declaration was as follows: "And the plaintiffs say that the defendants are teamsters and common carriers, and as such were by their agents and servants engaged in unloading and delivering from a wagon a cask of oil across the sidewalk in Broad Street in Boston into the warehouse of Mixer & Whitman there situate; and the female plaintiff was passing along said sidewalk at the same time, and in the exercise of due care attempted to pass over and across the skids then and there placed by the defendants' agents and servants from the wagon across the sidewalk into the warehouse, and then and there being used by them in unloading and delivering the cask of oil as aforesaid, that she might proceed upon her lawful business without delay; but the defendants' agents and servants so

carelessly and negligently managed and handled said cask of oil, and so carelessly and negligently failed to control it, that said cask of oil came upon the female plaintiff, throwing her down with great violence, crushing and fracturing her hip, and 'nflicting other serious injuries upon her person, by reason of all which the female plaintiff has lost the use of her hip and leg, and has suffered great pain of body, and anguish of mind, has become permanently disabled, and her general health permanently impaired." Answer, a general denial.

Trial and verdict for the defendants, in the superior court, before *Devens,* J., who allowed a bill of exceptions in substance as follows:

" It appeared that the defendants were teamsters, engaged in transporting merchandise and freight in Boston; that, at the time of the injury to Mrs. Murphy, their team, under the charge and control of Michael Quinlan, their servant, and consisting of a wagon and two horses, was backed up against the sidewalk, in front of the warehouse of Mixer & Whitman in Broad Street, and Quinlan was engaged in the duty of delivering a cask of oil into the warehouse, the weight of which cask was variously estimated by witnesses, from 1700 to 3000 pounds; that, for the purpose of removing the cask from the wagon into the warehouse, a pair of skids, from twelve to fourteen feet long, were placed by Quinlan from the end of the wagon at the edge of the sidewalk, (being there about two feet from the surface of the sidewalk,) extending over the sidewalk, and into the warehouse door, over the threshold, (which was from eight to ten inches above the sidewalk,) the length of the skids within the warehouse beyond the threshold being variously estimated by witnesses at from six inches to two feet; and that the cask was to be rolled down these skids from the wagon into the warehouse."

Mrs. Murphy testified, " that she was returning home from market, about ten o'clock in the forenoon, with a basket of provisions upon her arm, and in passing up Broad Street upon the sidewalk saw the team and the skids as above described · that as she approached the skids she saw three men, one of whom

was between the skids and one at each end of the cask, who were just ready to roll the cask upon the skids; that she attempted to go across the skids, when she was caught by the cask, thrown down, and her hip broken; and that she heard no warning against attempting to pass the skids."

Edward Everett, called as a witness by the plaintiffs, testified "that he was called to assist in unloading the cask, and was between the skids, holding on it, with another man at each end in front, going towards the warehouse backwards to prevent its descending too fast; that his feet slipped on the floor of the warehouse after he reached there, and he fell and the cask rolled upon the woman; that if the woman had not been there he would not have been in court to testify, but that other men sprang and stopped the cask after he slipped; that there was power enough to control the cask; that these men could do it, and that was the usual mode of unloading such casks; that if a parbuckle had been used, one man would control it; that he had seen a parbuckle used; that it was not generally but was sometimes used; that he heard no caution given at the time, and did not see the woman until he came upon her." On cross-examination he testified: "The cask did not get away. I held on to the cask, when I saw her dress, and sprang to hold it more, so that my foot slipped."

Solomon Harris, another of the plaintiffs' witnesses, testified that he was a lumper and was sitting on the skids when Quinlan drove up; that he saw the placing of the skids, and the preparation by Everett, Quinlan and another man to move the cask, Everett going between the skids, and the others to the ends of the cask; that he saw Mrs. Murphy when she had approached to within perhaps eight feet of them; that he was facing her and the skids, and was on the opposite side of the skids and saw the whole transaction; and he described it as follows:

When Mrs. Murphy approached, she stepped forward to cross the skids, and when one foot was over or upon the cross-bar of the skids, near the threshold of the warehouse door, the cask could not be held by the men, knocked Everett over backwards, and caught the woman, carrying her a short distance into the

warehouse, and stopping upon her. I jumped over the cask and with the assistance of the others, including Everett, rolled the cask back off the woman, and I picked her up. The cask then was let go, and rolled down into the warehouse." The witness further testified " that he was confident that the men could not control the cask; that if they had been able to control it, and had controlled it, the accident would not have happened; that he heard no caution given; that with a parbuckle the cask would have been handled with entire safety, and controlled by one man; that he had often seen a parbuckle used in unloading freight, and had used it himself often, but it was not always used; and that he was not in the employ of the defendants or of Mixer & Whitman." The description of the accident by this witness was confirmed by another witness named Sneed.

Patrick Dorrity, also called by the plaintiffs, testified " that there was a ring placed in the wagon of the defendants, for the purpose of using a parbuckle, and with a parbuckle the cask could have been under entire control by one man; that he saw a portion of the transaction; that the cask came down in the ordinary way; that he was in the employ of Mixer & Whitman, and was one of the men at the end and in front of the cask, helping unload it into the warehouse, was on the side next to the woman, was unloading this as we generally unloaded such casks, and unloaded many such in course of the year at the same place."

Quinlan, called as a witness by the defendants, testified that at the time of the accident he had been a teamster for many years; and further testified as follows: " I backed the wagon up to the sidewalk, placed the skids in position, and lighted down the cask. When we had got near to the door, Dorrity, who was helping, saw the woman, and halloed, and said, there was a woman. The place was so narrow, she had not time to get out of the way. The cask moved slowly, as the men had control of it. I did not know the woman was there. I and Dorrity were on the outside of the skids. There was no difficulty in unloading the cask, which weighed some 1700 or 1800 pounds. It was unloaded in the usual way. There was no delay. Al.

three men were right forward of the cask. I never let the casks go until they are down, and had not let the cask go when it struck the woman. I never used ropes on so small a cask, but often use them on larger casks. Some casks weigh two tons. The woman went around the skids. I had but one cask in that load." On cross-examination, this witness testified "that he had never used a parbuckle in unloading, before this accident, but had since used the rope only when alone, never when he had two men to help."

Further evidence was then introduced by the defendants, against the plaintiffs' objection, to the effect " that the ordinary mode of unloading freight of the kind in question was, to back the team up to the sidewalk, lay on the skids and unload by hand; that there is no difficulty in unloading by hand with two men; that one man could do it with a rope; and that, when the cask or skids are slippery with ice, sand is sometimes put upon them." This closed the evidence.

The plaintiffs asked the judge to rule " that the question for the jury was, whether the injury was occasioned entirely by the negligence, or improper conduct of the defendants' servant, or whether the female plaintiff herself so far contributed to the misfortune, by her own negligence, or want of ordinary and common care and caution, that, but for such negligence or want of ordinary care and caution on her part, the misfortune would not have happened; that in the first case the plaintiffs would be entitled to recover, and in the second they would not."

They further asked the judge to rule " that mere negligence, or want of ordinary care or caution, will not disentitle the plaintiffs to recover, unless it be such that, but for that negligence, or want of ordinary care and caution, the misfortune could not have happened, nor if the defendants might, by the exercise of care on their part, have avoided the consequences of the neglect or carelessness of the female plaintiff."

The defendants, both at the close of the plaintiffs' evidence, and again upon the submission of the whole case, asked for a ruling " that the evidence showed such contributive negligence, at least, upon the part of the female plaintiff, that she could not

recover;" but the judge declined to so rule, or to take the case from the jury, upon which final refusal the defendants submitted also requests for particular instructions.

" The judge did not instruct the jury in the terms requested by either party; but, among other things, instructed them that, to maintain the action, the plaintiffs must prove, in the first place, that the female plaintiff, at the time of the accident, was in the exercise of ordinary care; and in the second place, that the defendants were not in the exercise of ordinary care; that if the jury found that at the time of the accident the female plaintiff was guilty of negligence, or want of ordinary care, and this contributed to the accident, she would not be entitled to recover, although the jury might also find that the defendants were guilty of negligence, or want of ordinary care; that the law would not calculate or measure the comparative negligence or want of ordinary care of the two parties, if both were in fault, but if the female plaintiff's own negligence, or want of ordinary care, contributed to the accident, the plaintiffs could not recover."

The defendants then asked for a ruling "that, if the female plaintiff, seeing that the skids were down, and that the parties were in the act of unloading by running the cask down, undertook to cross under such circumstances and when the cask was coming down, she must do it at her own risk; that going across the skids in front of a cask coming down would be a want of due care." The judge said "that he did not feel it his duty to so instruct the jury; that it would be so, if she recklessly threw or put herself in front of the cask, but if she had reasonable cause to believe that she could cross with safety, it would not be a want of due care in attempting to do so."

The judge defined and illustrated what constituted "due care" and "ordinary care," as applicable to the conduct of each party, in language satisfactory to and not excepted to by either party, and referred to the evidence admitted, instructing the jury, among other things, "that the fact that people ordinarily unloaded in unsafe methods would not justify the defendants in so doing, and it was for the jury to say whether there was due

care used in the mode adopted, and in unloading, in this case and under the instructions of the court as to what constituted due or ordinary care as aforesaid." " To the foregoing ruling the plaintiffs except."

*N. St. J. Green,* ( *C. R. Train* with him,) for the plaintiffs. The instructions asked for are the instructions which the court of exchequer chamber, in *Tuff* v. *Warman,* 5 C. B. (N. S.) 573, declare to be the proper questions for the jury in all cases like the case at bar ; and they are deduced from cases which have been cited often by this court as authorities, and have never been questioned anywhere. *Tuff* v. *Warman* is regarded by the courts of England and Ireland as having definitely settled the form of instructions to be given to the jury *Scott* v. *Dublin & Wicklow Railway Co.* 11 Irish C. L. 377. *London, Brighton & South Coast Railway Co.* v. *Walton,* 14 Law Times, (N. S.) 253 ; *S. C.* Harr. & Ruth. 424.

These instructions were peculiarly called for in this case, by the state of the evidence. There was evidence proper for the consideration of the jury, that the same injury would have happened if Mrs. Murphy had not been negligent. In event of a finding of such a state of facts, her negligence cannot be said, in any legal sense, to have contributed to the accident. It appears that she was hurt while crossing the end of the skids. But there was evidence tending to show that she would have been hurt in the same manner, if she had passed into the warehouse and around the end of the skids. If the jury found that passing around the end of the skids would have been in the use of due care and the proper course for her to have taken, and that notwithstanding such due care the cask would still have rolled upon her and injured her in the same manner, then her case would be within the first qualification of the prayer for instructions; that is, the plaintiffs would have satisfied the jury that the injury was occasioned entirely by the negligence of the defendants, and that her mere negligence, in being a few feet in advance of the place in which she must have been had she acted prudently, was not negligence which brought the injury upon her.

There was evidence for the jury that the defendants might by

the exercise of due care on their part have avoided the conse-
quences of the carelessness of Mrs. Murphy; that they saw the
danger of the woman, while they could control the cask, but
proceeded to roll it forward, regardless of her peril.  If the
defendants saw her danger, and could then have prevented the
accident by the use of due care, but persisted in acting when
she was powerless to escape, then her prior negligence in ex-
posing herself to danger cannot be said in a legal sense to have
contributed to an accident which was the direct consequence of
the defendants' persistence in wrong.

The instructions given were correct as a general statement of
the law, but were not at all adapted to the evidence when more
particular instructions had been asked for.

*A. A. Ranney,* for the defendants, to the point that the burden
of proof rested on the plaintiffs, to show not only negligence on
the part of the defendants, but due care on the part of Mrs.
Murphy, cited *Smith* v. *Smith,* 2 Pick. 621; *Lane* v. *Crombie,* 12
Pick. 177; *Brown* v. *Kendall,* 6 Cush. 292; *White* v. *Winnisim-
met Co.* 7 Cush. 155; *Horton* v. *Ipswich,* 12 Cush. 488; *Parker*
v. *Adams,* 12 Met. 415; *Holly* v. *Boston Gas Light Co.* 8 Gray,
123; *Spofford* v. *Harlow,* 3 Allen, 176; *Wright* v. *Malden & Mel-
rose Railroad Co.* 4 Allen, 283; *Counter* v. *Couch,* 8 Allen, 436;
*Callahan* v. *Bean,* 9 Allen, 401.

WELLS, J.  The instructions given to the jury, in regard to
the conditions upon which liability of the defendants must de-
pend, were correct, and sufficient for the case that was presented
by the facts, and were carefully expressed and guarded.  We
do not understand that any objection is made to what they
contain.  The plaintiffs contend that they are not equivalent to
the instructions prayed for; and that they are entitled to a new
trial on account of that deficiency.

We are of opinion that whatever is contained in the instruc-
tions prayed for, beyond what is in those given, or inconsistent
therewith, is not in accordance with the well established princi-
ples of law.  The difference appears to be this.  It is contended
that contributory negligence on the part of the female plaintiff
ought not to defeat the action, unless it should appear that, in

the particular case, it did in fact contribute to such an extent that the injury could not or would not have occurred but for her negligence. The counter-proposition, which we think to be more nearly a true statement of the legal principle, is, that there can be no recovery unless it shall appear that the injury happened, or would have happened, irrespectively of any negligence on the part of the female plaintiff. This is necessarily involved in the general rule, which applies to all cases of this nature, to wit, that the plaintiff must show not only negligence on the part of the defendant, but due care on his own part. That the burden of proof rests upon these plaintiffs to maintain both of these points is clearly established by the authorities cited by the defendants; and rests, as we think, upon sound principle. The plaintiffs do not sustain that burden, if the proof leaves it in doubt whether or not the injury resulted in whole or in part from the fault of the female plaintiff.

The last part of the instructions prayed for suggests another question, which, in certain conditions of facts, may require careful consideration ; to wit, how far the obligations and liabilities of one party are modified towards the other, after knowledge of a negligent exposure, by the latter, to danger from the acts or neglect of the former. In such case, what would otherwise have been mere negligence may become wilful or wanton wrong; or may take the place of the sole direct or proximate cause; the negligence of the other party being then regarded as a remote, and not a contributory cause. But no such question arises upon the facts of the present case.

The instructions of the court were all that were required by the facts, and the verdict is well warranted by the testimony. We should not consider further discussion necessary or appropriate, but that we observe that the prayer for instructions is framed in the precise terms of a statement by Mr. Justice Wightman in the case cited of *Tuff* v. *Warman*, 5 C. B. (N. S.) 573; which statement also forms the headnote of the report of that case.

The verdict in that case was for the plaintiff. The judge at *nisi prius* had instructed the jury that negligence of the plain-

tiff, contributing directly to the injury, would defeat his recovery The only question was, whether the use of the term " directly ' was not too restrictive, and likely to mislead the jury; and the verdict was sustained on the ground that other portions of the charge made it clear that the jury must have understood the term as distinguishing between proximate and remote causes The real question in the case was, not so much the effect of contributory negligence, as whether the alleged negligence of the plaintiff was so remote as not to bear the character of contributory negligence. Throughout the discussion the general doctrine is recognized that negligence of the plaintiff, coöperating to produce the result, will defeat the action ; that the negligence of the defendant must be the sole cause of the injury. It is so explained by Mr. Justice Willes in the case of *London, Brighton & South Coast Railway Co.* v. *Walton*, 14 Law Times, (N. S.) 253; *S. C.* Harr. & Ruth. 424 ; and so understood in *Scott* v. *Dublin & Wicklow Railway Co.* 11 Irish C. L. 377.

It is apparent that the statement taken from *Tuff* v. *Warman* entirely overlooks the practical application of the rule as a guide in the trial of a cause. It was probably made without reference to the burden of proof. It not only fails to take into account the well settled principle that the burden is upon the plaintiff to show due care on his own part, but, by its form, implies the contrary. We think, however, that the statement will be found to be faulty in substance, as well as in form. One of the propositions in this statement is, that " mere negligence, or want of ordinary care or caution, will not disentitle the plaintiff to recover, unless it be such that, but for that negligence or want of ordinary care and caution, the misfortune could not have happened." There is certainly nothing indicated in this proposition for the plaintiff to establish affirmatively. More than this ; if it should appear that the negligence of the defendant was an adequate cause to produce the result, the plaintiff must recover, even though he was himself equally, or even to a greater degree than the defendant, in fault. If the case can be supposed in which both parties were equally in fault, the fault of each being equally proximate, direct, and adequate to produce the result, so that it

might have occurred from the conduct of either without the fault of the other, there would then be a case of contributory negligence, for the consequences of which neither could recover from the other. But upon the statement quoted from *Tuff* v. *Warman*, neither would be "disentitled," and therefore both could recover if both suffered injury, each from the other. Every case in which the proof fails to show, or leaves it in doubt, which of two sufficient causes was the actual proximate cause of the injury, is practically such a case. It is manifest from this illustration, that, as a definition of the limits of the right to recover in such cases, the proposition referred to must be logically incorrect. Eliminating negatives from the first branch of the proposition, it is, that a plaintiff may recover in such cases, unless the misfortune could not have happened but for his own negligence. This, as we have seen, being stated affirmatively, is too broad, and not correct; although its supplement or negative counterpart is correct, as far as it extends, to wit, that he cannot recover if the misfortune could not have happened but for his own negligence.

In *Greenland* v. *Chaplin*, 5 Exch. 248, Chief Baron Pollock states the rule " that, when the negligence of the party injured did not in any degree contribute to the immediate cause of the accident, such negligence ought not to be set up as an answer to the action." Except that, in form of statement, it leaves out of view the consideration of the burden of proof, this seems to us to be accurate, and in accordance with the current of authorities. See *Dowell* v. *General Steam Navigation Co.* 5 El. & Bl. 195; *Bridge* v. *Grand Junction Railway Co.* 3 M. & W. 244; *Johnson* v. *Hudson River Railroad Co.* 20 N. Y. 65; *Trow* v. *Vermont Central Railroad Co.* 24 Verm. 487; *Beers* v. *Housatonic Railroad Co.* 19 Conn. 566.

The statement in *Tuff* v. *Warman* proceeds thus : " Nor if the defendants might, by the exercise of due care on their part, have avoided the consequences of the neglect or carelessness of the plaintiff." This, as already suggested, may be correct as applied to a case like *Tuff* v. *Warman*, where the negligence of the plaintiff was in a certain sense remote, preceding the neglig~nt

conduct of the defendant. But where the negligent conduct of the two parties is contemporaneous, and the fault of each relates directly and proximately to the occurrence from which the injury arises, the rule of law is rather that the plaintiff cannot recover if by due care on his part he might have avoided the consequences of the carelessness of the defendant. *Lucas* v. *New Bedford & Taunton Railroad Co.* 6 Gray, 64. *Waite* v. *Northeastern Railway Co.* 9 El. & Bl. 719. *Robinson* v. *Cone*, 22 Verm. 213. Suppose the case of a collision upon a public highway; both parties careless and equally in fault, but either, by the exercise of proper care on his part, might have avoided the consequences of the carelessness of the other. By the proposition last quoted from *Tuff* v. *Warman*, each would be liable to the other, and each would be entitled to recover from the other, for whatever injuries he might have thus received.

We think it is manifest that the rule thus laid down in *Tuff* v. *Warman* is not the correct rule of law which governs ordinary cases of injury by negligence; but whenever there is negligence on the part of the plaintiff, contributing directly, or as a proximate cause, to the occurrence from which the injury arises, such negligence will prevent the plaintiff from recovery; and the burden is always upon the plaintiff to establish either that he himself was in the exercise of due care, or that the injury is in no degree attributable to any want of proper care on his part. *Trow* v. *Vermont Central Railroad Co.* 24 Verm. 487. *Birge* v. *Gardiner*, 19 Conn. 507.  *Exceptions overruled.*