McIlvaine, J.
Several questions are presented for our consideration in this case.
I. It is claimed that the written memorandum of the contract sought to be enforced, is not sufficient to satisfy the statute of frauds, in this, that it does not contain the names of the vendors.
The memorandum is as follows:
“ Cincinnati, June 7,1869.
“ This is to certify that I have this day purchased, at auction, through George H. Shotwell &. Co., Hemmelgarn & Co., and Hoeffer & Buening, auctioneers, a lot 167.80 feet front, and 210 feet, more or less, in depth, with improvements, at $50i per front foot, one-fourth cash, and the balance in one, two, and three years, with interest at six per cent., secured by mortgage on the premises, being lot4 A,’ in Barton, Brewster, and Eolz subdivision.
“Michael Walsh.”
This writing, by fair construction, shows that the auctioneers therein named, acted, in and about the making of the sale, as the agents of the vendors. It is certified therein, by the vendee, who is the party sought to be charged, that he purchased the property described, at auction, through them. By this language, we understand that the property was sold to him, by them, as auctioneers, and if so, it sufficiently appears that they were the agents of the vendors. The only question, therefore, is whether it be necessary, in order to satisfy the statute of frauds, that *40 the names of the principals should appear in the memorandum, in a case where the contract was, in fact, made by their agents, and the names of the agents are set out in the writing. "We think the statute is satisfied in this respect, when the names of the agents are set out in the writing, though the names of their principals be not disclosed. The case being thus taken out of the statute, the right or liability of the principals may be enforced, and their identity established, according to the rules of law governing in other cases, where contracts are made by agents without disclosing their principals. White v. Proctor, 4 Taunt. 209; Hood v. Lord Barrington, C. L. P. (Eq.) 221; Lerned v. Johns, 9 Allen, 419; Eastern R. R. Co. v. Benedict, 5 Gray, 561; Gowen v. Klous, 101 Mass. 455; Higgins v. Senior, 8 Mees. & W. 834; Thayer v. Fuller et al., 22 Ohio St. 78.
II. Did the plaintiffs below show such title in themselves as warranted the decree for specific performance ?
1. The plaintiffs had contracted to convey to the defendant a good title, or, as the conditions of sale termed it, a “perfect title.” The defendants denied that they were possessed of such a title; and the only evidence offered to show title in themselves, was a deed from the Marietta and Cincinnati Railroad Company to them, dated May 22,1869, less than a month prior to the sale, together with oral testimony, tending to prove that the railroad company had been in possession before the date of the deed. The nature of this possession, or the length of time during which it was held, was not shown.
Captious objections to the title ought not to prevail, when made by a purchaser who seeks to avoid the performance of his contract;-but in a case for specific performance, when the title of the vendor is denied, a decree should not be rendered against him, unless it be made to appear, with reasonable certainty, that the title is good; and the burden of making it so appear rests upon the vendor. Having contracted to convey a good title, and the evidences of his title being matters peculiarly within his own knowledge, *41 "the vendor must aver and prove that he is able, as well as willing, to perform the contract on his part. We do not say that the vendor, in such case, should be called upon, in the first instance, to show, beyond all doubt, that his title is perfect; but he should satisfy the chancellor that his title is such as would satisfy men of ordinary prudence. We think, therefore, that the court below was not warranted in finding, from the testimony, that the plaintiffs were able, to comply with the conditions of the contract on their part.
2. Did the court err in permitting, against the objections of the defendant, the deed from the M. & C. R. R. Co. to the plaintiffs, to be given in evidence without proof of its execution?
This deed purports to have been signed by John King, Jr., president of the corporation, and under the seal of the corporation, as authorized by section 15 of the act of May 1,1852 (S. & C. 279); and its execution purports to have been attested by two witnesses.
The signature of the president of the corporation to such a deed does not prove itself, nor is it provenby the seal of the corporation. It was error, therefore, to admit the deed without proof of its execution by the president of the company.
It is suggested 'by defendants in error, that, in fact, the record of the deed, from the office of the recorder of Hamilton county, was the instrument offered, and not the original deed: and that the record was admissible without proof of the execution of the instrument recorded.
To this suggestion it is sufficient to say, that the bill of exceptions shows that the deed itself was the objectionable instrument admitted, and we are not at liberty to question the verity of the record.
3. Waiving the error in admitting in evidence the deed from the railroad company to the plaintiffs below, it is claimed by the plaintiff in error that the title of the plaintiffs below is at least doubtful, because the railroad corporation had no power to acquire or transfer the title to the premises in question.
*42 We agree with counsel, that a corporation has power to-acquire real estate only when such power is granted to it by statute or by its charter. Power to acquire and convey real estate, however, was granted to this railroad company by section 14 of the act of February 11,1848 (S. & C. 273 note), as follows, to wit:
“ Such company may acquire, by purchase or gift, any land in the vicinity of said road, or through which the same may pass, so far as may be deemed convenient or necessary by said company to secure the right of way, or such as may be granted to aid in the construction of said road, or be given by way of subscription to the capilal stock; and the same to hold or convey in such manner as the directors may prescribe.”
See also section 15 of act of May 1, 1852, S. & C. 279.
The only testimony in this case tending to show the purpose for which the company acquired these lands, is to the effect that they were purchased to secure a right of way for its road through the same. If such purchase, in the exercise of good faith, was, by the company, deemed convenient or necessary to secure the right of way for the road, it is clear that the power granted by the statute was ample for the purpose. If, however, it were shown that the company abused its discretion and power in making the purchase — that, in fact, the purchase of the whole of these lands was not convenient or necessary to secure the right of way for its road — still, we think, that the lands having been purchased by the company for a valuable consideration, and having afterward been conveyed to the plaintiffs, the title became indefeasible in them. In no event, under the laws of this state, would the property escheat; and the vendor of the company, and the company itself, having executed the conveyances and delivered possession, would be estopped from questioning the validity of the plaintiffs’ title. Whatever consequences might result to the corporation, if the state were to inquire into the abuses of its charter, it is quite certain that the title to these premises in the possession of the plaintiffs below or their assigns, would *43 not be affected by such inquiry. 3 Rand. 136; 7 S. & R. 313; 11 S. & R. 411; 7 Penn. St. 233; 4 Johns. Ch. 370; 4 Sandf. Ch. 758; 9 Humph. 306; Land v. Hoffman et al., 12 Am. L. Reg. 143, Sup. Ct. of Missouri.
III. It is also claimed that the plaintiffs below were not entitled to the decree for specific performance, because the title tendered to the defendant was subject to certain incumbrances.
1. Previous to the conveyance of these lands by the railroad company to the plaintiffs, and in fact before the railroad was constructed through them, the company had executed two mortgages to one Taylor, as trustee, to secure the holders of the company’s bonds, upon the following described property, to wit:
“ The road of the said party of the first part from Marietta, and Belpre to Cincinnati and Dayton, and Hillsboro, whether made or to be made, acquired or to he acquired, and all property, real and personal, of said party of the first part, whether now owned or hereafter to be acquired, used or appropriated for the operating or maintaining the said road extending from Marietta and Belpre, as aforesaid, and all the priveleges and franchises of said party of the first part for the holding, operating, and maintaining the same, together with the income thereof.”
At the time of trial below, these mortgages were unsatisfied. The testimony shows that the railroad was not located on the lands embraced in the purchase of the defendant below, nor were the lots purchased by him ever used or appropriated for railroad purposes. The question, then, is this: Was the entire tract of land embraced in the-, mortgages? We think not. The words “ used or appropriated for the operating or maintaining the said road,” restrict the operation of the granting words contained in the mortgages, to such property, personal or real, of the company, as then was or thereafter might be used or appropriated for operating or maintaining the road. Any property which the company then owned, or afterward acquired, which has in fact been used or appropriated for *44 operating and maintaining the road, and none other, is subject to these mortgage liens. The defendant’s purchase, therefore, was not incumbered by th§se mortgages.
2. In May, 1869, one William M. Picksley recovered a judgment in the Superior Court of Cincinnati, against the Marietta and Cincinnati Railroad Company, for $5,000, and costs. This judgment was a lien upon the lands sold to the defendant below, and was in full force at the time of ■decree for specific performance. No provision was made in the decree for the protection of the purchaser against this lien, by application of the purchase money or otherwise.
The defendants in error do not contend that the plaintiff in error should have been compelled to perform his contract and take the risk of having his property afterward •subjected to the -payment of this judgment; but they ■claim — 1. That this judgment has been superseded, and is now under review on proceedings in error in this court; and 2. That the judgment debtor is possessed of ample property, which must be exhausted before the property in ■controversy can be subjected to the payment of the judgment.
These arguments may be answered in several ways: 1. The facts upon which they are based do not appear in this re•cord; 2. If the facts be admitted, still the lien of the judgment is preserved notwithstanding a supersedeas bond may have been given, and if the judgment be affirmed, it is not at all clear that equity would compel the judgment creditor to first exhaust the property remaining in the railroad ■company before he could have satisfaction out of the property in question; and 3. At all events the purchaser should not be required to assume either the risk or expense of prosecuting an action to compel the judgment creditor to seek satisfaction out of other property of the judgment debtor.
We think the liability of the lots in question to be taken for the satisfaction of this judgment, is quite too imminent, to justify a decree for specific performance against the purchaser, without at least protecting him against such *45 hazard, by an application of the purchase money to the discharge of the judgment.
3. The lots of land in controversy are parts of a certain tract or tracts conveyed by the Marietta and Cincinnati Railroad Company to the defendants in error on the 22d of May, 1869. The line of the grantor’s railroad was located upon the lands thus conveyed. The conveyance was by deed-poll, which contained the following stipulation s, viz:
“But said tracts, and each of them, are subject to the-obligation hereby imposed upon the grantees to discharge, and save harmless, the grantor herein from the duty of building or maintaining any fence on either side of its-track through or between said lands; and said grantees, in accepting this deed, assume said duty and obligation, and bind themselves, their heirs and assigns, to build and perpetually maintain, along the lines of the railroad of the-grantor, on each side thereof (except where the same may be intersected or crossed by streets, alleys, or public ways), so far as said railroad runs through or between either of said parcels of land, or is contiguous thereto, a good and substantial fence.”
It is claimed by plaintiff in error, that these stipulations constitute a covenant on the part of the grantees to build and perpetually maintain the fences named; that this covenant runs with the land, so that the defendants in error were unable to convey the lots by him purchased, with title perfect and unincumbered, as they had contracted to do.
If it be conceded that it was competent for the parties to that conveyance to impose upon the lands conveyed a servitude or burden for the benefit of lands retained by the company for the use of its road; and if be further conceded that such burden, if the parties so intended, would attach to every part of the servient estate and follow it into whosesoever hands the same or any part of it might come, then, it is necessary to inquire, in the light of the surrounding circumstances, whether such was the intent of the parties in this case.
*46 ¥e think it quite certain that the parties to this deed contemplated, at the time it was made, that the land would be disposed of in subdivisions or building-lots. It was in fact sold in lots, at public auction, within sixteen days from the date of the deed. The plat of the subdivision was made and advertised before the auction. In the deed itself, fences are excepted where the lines of the railroad might be intersected or crossed by streets, alleys, or public ways. If such subdivision and sale of the premises, in lots, were contemplated by the parties, it is unreasonable to hold that any lot was intended to be burdened with the maintenance of fences against which it does not abut.
The lots purchased by the plaintiff’ in error are not contiguous to the lines of the railroad, but are situated at considerable distance therefrom. Several other lots intervene between them and the line of the road. And whatever may be the burden (if any) which rests upon lots abutting on the line of the railroad, as to maintaining fences thereon, we think the plaintiff in error has no reasonable grounds to apprehend any loss or inconvenience from the supposed incumbrance of maintaining fences, as provided for in this deed.
IV. It is also claimed by plaintiff' in error, that he was entitled to avoid the sale on the grounds of fraud, in this, that notwithstanding the property was offered at auction, on the condition that the sale should be without reserve, yet the vendors secretly employed bidders for their own benefit.
“ Sale positive” was one of the conditions of the auction, and we agree with counsel for the plaintiff in error, that these words are equivalent to “ sale without reserveand we also agree with them, that when a sale at auction is announced to be without reserve, it is a fraud on the part of the vendor to employ a bidder to keep up the price on his behalf, and that such fraud is a bar to an action for specific performance. At such sale, it is the right of the highest bidder to have the property knocked down to him, under any and all circumstances, without reference to the *47 ■amount to which the bidding may go. TJ pon examination ■of the testimony, however, we are not satisfied that such fraud was committed at this sale, by the vendors or their agents. It is true that one of the auctioneers procured a person (who did not intend to take the property at his own bid) to bid at the sale; but we are not satisfied that such •employment was not authorized by another person for whom the bid was intended, and who was ready and willing to bake the property at the bids thus procured, if they had proven to be the highest bids. It is also true that one John Ryan, who had some interest in the sale, jointly with the defendants in error, bid in good faith, and purchased some of the lots on his own account. This, however, was not bidding in violation of the conditions of sale, as it could, in no event, have prevented a sale to the highest bidder.
From this view of the case, it follows that the judgments below must be reversed for error, in admitting in evidence the deed from the railroad company to the plaintiffs below, without proof of its due execution; in finding that the title of defendants was such as they had contracted to convey, and in decreeing specific performance without protecting the purchaser against the lien of the judgment in favor of Picksley.

Judgments reversed, and cause remanded for further proceedings.

Day, C. J., Welch, Stone, and White, JJ., concurred.