Clements and Wife vs. Electric Light Co.

No. 10,925.

DENNIS CLEMENTS AND WIFE VS. LOUISIANA ELECTRIC LIGHT COMPANY.

The violation of a duty specified by law is negligence; therefore, when a city ordinance under which an electric lighting company is operated requires it to have the "splices" on its wires perfectly insulated, the failure to do so is negligence.

A person whose occupation brings him in proximity to the company's wires has a right to believe that the wires have been insulated and the ordinance complied with. He is required to look for patent defects in the insulation only. If not aware of a latent defect he comes in contact with the wire and is injured without fault on his part, the company is responsible.

When the action of both parties must have concurred to produce the injury, it devolves upon the plaintiff to show that he was not himself guilty of negligence.

This proof need not be direct, but may be inferred from the circumstances of the case.

Where an electric wire is stretched over a roof and a party goes on the roof to repair it, and the wire is of that height above the roof that the chances are that he will come in contact with it by going under it or stepping over it, it is not negligence to pursue either mode of crossing if he exercises all necessary and prudent care to protect himself in proportion to the danger.

When a person is employed in the presence of a known danger, to constitute contributory negligence it must be shown that the plaintiff voluntarily and unnecessarily exposed himself to the danger.

APPEAL from the Civil District Court for the Parish of Orleans. King, J.

J. R. Beckwith and J. B. Fisher for Plaintiffs and Appellees

Farrar, Jonas & Kruttschnitt for Defendant and Appellant.

The opinion of the court was delivered by

MCENERY, J. Joseph Clements was killed on the 4th day of October, 1890, by an electric current from the wires of the defendant company while engaged in repairing the gallery roof at the corner of Gravier and Camp streets, in the city of New Orleans.

The plaintiffs, the father and mother of the deceased, sue the defendant company for damages for the death of their son.

There was judgment for the plaintiffs for $5000, and the defendant appealed.

Joseph Clements was a tinsmith by occupation. He had been employed to go on the roof of the gallery to repair the same by a contractor.

He was accompanied by another young man, Alfred Anderson.

In half an hour after they went on the roof, Clements was killed by coming in contact with the defendant's wires. Two of defendant's wires run up and down Camp street over the roof of this gallery.

They were two feet four inches above it. They were some seventeen inches distant from each other, and the inside wire was about four feet from the Camp street edge of the gallery.

The wires were fastened to a support or "horse" on the gallery, and the inside wire, to prevent its contact with other wires, was secured to the horse by a piece of telephone wire.

Between the horse and the Gravier street side of the gallery there was, on the inside wire, a joint covered with insulating tape. To all appearances it was in good condition, but had been worn by the exposure to the weather, and had evidently lost some of its insulating properties.

The defects, however, were not visible, but were exhibited during a storm, as shown by the testimony of S. W. Bennett. From his testimony it is shown that the insulating tape had been defective for a considerable time. He occupied a room fronting on the roof, and forbid his employees from going on it on account of the want of proper and safe insulation over the wires.

Clements and his companion were engaged in cleaning the roof, the first in sweeping and the other in carrying off the dirt.

The fatal injury to young Clements was rapid in its results, so quick in execution that no witness, not even the witness who was on the roof with him, was able to state with precision his position when he received the shock from the wire. But we think, from all the attendant circumstances, that he was either stepping over the wire or going under it. It is probable that he came in contact with both wires, making a short circuit, increasing the energy of the electric force. The unprotected or uninsulated places which were not visible on the splice in the wire came in contact with his body under the right shoulder blade.

The wires were so close to the roof that to pass from where Clements was first seen sweeping to the gutter, he must either have stepped over or crawled under.

From the distance of the wire above the roof, to step over would in all probability have brought Clements' body in contact with one

or both wires.   He was only of medium height, and to step two feet four inches would require not only exertion, but some skill to keep clear of touching the wires.

It is in evidence that about the time the accident occurred there was considerable leakage on defendant's line of wires, and this is urged as evidence of neglect on the part of defendant because it showed defective insulation.

But the general defect along the defendant's line can not be evidence of want of due diligence and care.   It must be shown that the accident was occasioned by some defect at the point where the injury was inflicted.   Nivette vs. Lake Railroad Company, 42 An. 1153.

We are aware of the difficulty which confronts the defendant company in keeping its many wires passing over a large territory to great distances, in a condition of perfect insulation.   Parts of the line will necessarily become uncovered, and all that can be expected is that the company will inspect its lines and repair defects as early as practicable.   The particular defect in insulation in this case which is complained of was one of long standing, and by a careful inspection of its lines it would have been brought to its notice.

By city ordinance 806, Council Series, the legal duty of the defendant is specified.

Section 8 of the ordinance provides "that all splices or joints, wherever the same may occur, shall be thoroughly soldered after such joint or splice is made, and in addition thereto shall be well and thoroughly wrapped with kerite tape or other insulating material, so as to produce perfect insulation at such joint or splice." This ordinance was a contract with each and every inhabitant of the city. The defendant's standard of duty was fixed by it, and it is the same under all circumstances, and its omission is neglect.

The first requirement of the plaintiffs was to show the existence of this duty which they alleged had not been performed, and having shown this, they must show a failure to perform the duty, and thus establish negligence on the part of the defendant.

It is an affirmative fact, the presumption being until the contrary appears, that every person will perform the duty enjoined by law or imposed by contract.   Cooley Torts 659, 661.

In many cases evidence of the injury done makes out a *prima facie* case; for instance, where a bailee returns in an injured condition an

article which has been loaned to him, or where a passenger on a railway train is injured without fault on his part.

The city ordinance does not specify at what particular localities splices shall be perfectly insulated. On all parts of the line of defendant company where they occur the duty is specified.

The wire of defendant was spliced, and was not insulated as required by the ordinance. It passed over a roof, to which people in adjoining rooms had access, and where in the course of time mechanics must. go to· make repairs, or laborers to sweep off or clean the roof.

It was the duty of the company, independent of any statutory regulation, to see that their lines were safe for those who by their occupation were brought in close proximity to them.

In this respect and in this particular case we are of the opinion that the defendant's negligence caused the death of Clements.

But notwithstanding this fault of defendant, if the evidence shows. that the plaintiff himself was guilty of negligence, contributing to the injury, he can not recover.

The question is whether the act of the party injured had a natural tendency to expose him directly to the danger, which resulted in the injury complained of.

If the plaintiff could, by the exercise of reasonable care at, or just before the happening of the injury to him, have avoided the same he can not recover damages for the injury.

When the action of both parties must have concurred to produce the injury, it devolves upon the plaintiff to show that he was not himself guilty of negligence.

He must show affirmatively that he was in the exercise of due and reasonable care when the injury happened. 40 An. 787; 83 Ill. 354; 19 Conn. 566; 78 N. Y. 480; 101 Mass. 455.

This proof need not be direct, but may be inferred from the circumstances of the case. 104 Mass. 137; 41 An. 964; 2 Thompson Negligence, 1178.

The deceased Clements was lawfully on the gallery roof. He was. engaged in a service that necessarily required him to run the risk of coming in contact with defendant's wires, either by stepping over them or going under them. It is probable that the latter mode was. the most convenient, and there is no evidence that in so doing he incurred any greater risk.

The wires were visible and to all appearances were safe.

The great force that was being carried over the wire gave no evidence of its existence. There was no means for a man of ordinary education to distinguish whether the wire was dead or alive. It had all the appearance of having been properly insulated. From this fact there was an invitation or inducement held out to Clements to risk the consequences of contact.

He had a right to believe they were safe, and that the company had complied with its duties specified by law.

He was required to look for patent and not latent defects. Had he known of the defective insulation and put himself in contact with the wire, he would have assumed the risk.

The defect was hidden, and the insulation wrapping was deceptive. It is certain, had it been properly wrapped, Clements would not have been killed. His death is conclusive proof of the defect of the insulation and the negligence of defendant.

He exercised reasonable care in going under the wire in the performance of his duty, as he had a right to believe, from external appearances, that the wire was safe. His action was such as not to tend to expose himself directly to the danger which resulted in the injury. In fact there was no apparent danger.

But it is urged that Clements was cautioned to keep away from the wires by his employer, Brady, and his failure to do so was gross carelessness on his part.

The evidence on this point is as follows:

Q. Did you call Clements' attention to the wires?

A. No, sir; I cautioned him to be careful of the wires. Every man goes over a roof must keep away from the wires.

Q. It is the business of a man who goes over a roof to keep away from them?

A. Yes, sir.

Q. Did he understand that business?

A. Yes, sir.

Q. Did you caution him that morning to keep away from the wires ?

A. Yes, sir.

Clements' attention was not directed to any particular danger from the wires. No apparent defect was pointed out to him.

The admonition to him was only of a danger which he knew to

exist, according to the statement of Brady, before he advised him to be cautious of going near the wires, or to keep away from them.

There was only that instinctive dread of danger which overtakes one when he approaches a railroad track. The track in itself is not dangerous, and is only made so by the passage of a train of cars over it. They announce their approach, and hence a person before he attempts to cross a track must exercise great caution, stop and listen, and look up and down the track. Having done this, if a train approaches silently without the accustomed signal and injures him, he would be entitled to recover damages for the injury. Curley vs. Railroad Company, 40 An. 817; Browne vs. Railroad Company, 42 An. 350.

The electric wires gave no signal of danger. Listening would not have revealed any danger. It is hidden and silent. But they are disarmed of danger if properly insulated. By looking one can see if there are evidences of insulation.

If there are evidences of it, and no defects are visible after careful inspection, one whose employment brings him in close proximity to the wire, and which he has to pass, either over or under it, is not guilty of contributory negligence by coming in contact with it, unless he does it unnecessarily and without proper precautions for his safety.

It can not be said that when Clements went on the roof to repair it he went into the presence of known danger and assumed the hazards of the employment.

The employment was not dangerous. The wires, if properly insulated, as above stated, would have been harmless. It was only a remote danger, which he had to risk, and this depending upon the fact whether or not the defendant company had done its duty as specified by law. The external appearances, the only indication of performed duty to which Clements' attention could be fixed, were guarantees that the defendant company had done its duty. These appearances assured him that in the performance of his work in sweeping the roof it was not dangerous for him to risk going over or under the wire. Bomar vs. Railroad Company, 42 An. 983.

Even in the presence of a known danger, to constitute contributory negligence it must be shown that the plaintiff voluntarily and unnecessarily exposed himself to it, unless it is of that character that the plaintiff must assume the risk from the very nature of the danger to which he is exposed.

City vs Bank.

From the appearances of the wire, its wrappings with insulated tape, and the known duty of the defendant to protect the insulation at this particular splice or joint, Clements had no reason to anticipate danger, except from the fault of the defendant company.

This fault was the cause of his death, and his act in passing under or over the wires was too remote to give it the character of contributory negligence.

This suit was brought under the provisions of Act 71 of 1884 amending Art. 2315 Civil Code.

The plaintiff therefore can only claim such damages as the deceased Clements could have done had he survived the injury. These would have been for mental and physical suffering, and actual pecuniary loss.

The deceased was almost instantly killed, and no damage can be awarded for suffering. The next inquiry is, what have the plaintiffs suffered pecuniarily by the death of their son in the loss to them of his contributions to their support? The evidence does not show that the plaintiffs were dependent for their support from his earnings, which were not very large, varying, $1.50 to $2.50 per day.

The parents, although their domestic relations were pleasant, lived apart, each with a child.

The deceased's father says that when he wanted anything he asked him for it and he, if he had it, willingly gave it.

From the facts as to the amount contributed by the deceased to the support of his parents, we conclude that the verdict of the jury awarding $5000 damages is excessive.

Two thousand dollars, we think, would be a most liberal award.

The judgment appealed from is amended so as to fix the amount of the damages for plaintiffs at $2000, and in other respects it is affirmed.

Appellees to pay costs of appeal.