No. 497

First Circuit

BEL v. LA. POWER & LIGHT CO.

(June 28, 1929.  Opinion and Decree.)
(October 10, 1929.  Rehearing Refused.)
(December 2, 1929.  Writ of Certiorari and
Review Refused by Supreme Court.)

S. S. Reid, of Amite, attorney for plaintiff, appellee.

Milner and Porteous, of New Orleans, attorneys for defendant, appellant.

ELLIOTT, J.  Mrs. Caroline P. Bel claims damages of the Louisiana Power & Light Company in amount, $15,290 on account of the death of her daughter, Bessie Rosa Bel, killed on June 3, 1928, as a result of coming in contact with defendant's electric wire.  The wire in question is the one which furnished her residence with electricity for lighting purposes.  Mrs. Bel alleges that said wire should have carried for that purpose a voltage of 110 volts, but that same, through the negligence and fault of defendant, became charged with a voltage of 2300 volts.

The defendant denies the negligence alleged against it and alleges that plaintiff's daughter lost her life as a result of her act in standing on a stove in plaintiff's kitchen and attempting to use the electric light near the stove on which she was standing.  That the stove had a water pipe running through it containing water. That the electric socket on the wire being

defective, and the stove having a water pipe running through it containing water, the same made a perfect ground. That the death of plaintiff's daughter was due to the defective socket and to the fact that her daughter took hold of the socket while standing on the stove, containing water.

Defendant admits that the ordinary voltage for lighting purposes on a drop wire is 110 volts, and denies that a larger voltage was on said wire at the time in question.

There was judgment in favor of plaintiff for $7,790.

The defendant has appealed.

The plaintiff alleges that her daughter was killed while attempting to turn on the electric current; but Mrs. Margaret Bel, present at and the only eyewitness of the occurrence, says: "She (Bessie Rosa) had gotten up on the stove, and was going to clean out the stovepipe, and I was helping her. I had just turned the stovepipe loose, and she grabbed the light wire, I guess, to see how much soot was in the stovepipe; and she said, 'Oh!' And after she said that, she fell, and I picked her up."

She further testified that Bessie Rosa put her left hand on the wire, probably 10 or 12 inches above the socket, maybe not quite that much; that the light was on at the time; that the wire was just an ordinary drop light wire.

"Q. How long was it after she took hold of that wire, before she fell?

"A. Just instantly. It was instantaneous; just a flash of a second, you might say."

The stove had a hot-water pipe in it, and the statement of Mrs. Margaret Bel justifies the inference that Bessie Rosa Bel took hold of the drop wire for the purpose of drawing the light nearer to the stove or pipe, in order to see if all the soot had been removed; but she fell the instant she took hold of the wire.

The accident occurred about 7:30 or 8 o'clock p. m.

The electric light in question was the only light in the kitchen; it was instantly extinguished by the occurrence, leaving the kitchen in darkness. It was some 10 minutes before a lamp could be obtained, and when it was done it was found that the socket on the end of the wire was on the floor. Nobody saw it pulled off, but a reasonable inference is that, when Bessie Rosa Bel took hold of the wire, 10 or 12 inches above it, the current caused her hand to involuntarily and tightly grip the wire, and falling at the same time, with the wire tightly gripped in her hand, the weight of her falling body caused the wire to slip through her hand until it reached the socket, when, her grip not relaxing, the weight of her falling body jerked the socket from the wire. The socket was evidently stripped from the end of the wire as a result of her falling body, not acting consciously nor voluntarily.

Defendant's argument that plaintiff's daughter pulled off the socket, and that her act in doing so constituted negligence, cannot, in our opinion, be properly deduced from the established facts of the case.

The cry, "Oh!" the fall, and the death grip occurred the instant that decedent took hold of the wire, some 10 or 12 inches

above the socket. Her hand did not come in contact with the socket until the result of having taken hold of the wire had been accomplished.

Defendant's liability is to be judged by the voltage in its wire 10 or 12 inches above the socket, at the time when the decedent took hold of it. Defendant maintains four wires, two of them primary or high-powered wires, which carry each 1,080 volts. The other two are secondary wires, which carry current into the house, each of which ordinarily contains 110 volts. These four wires all pass through a tree not far from plaintiff's house. In passing through the tree, the high-power wires and secondary wires are only about one inch apart. One of these secondary wires supplies the current for plaintiff's house. These high-power and secondary wires, it was shown, also touched at times the same limb in the tree, and, when this connection was made, the high voltage from one or both of the primary wires entered into the voltage of the drop light in question, rendering it deadly to take hold of.

A test made a few minutes after the death of plaintiff's daughter showed that that is what had taken place on the occasion in question.

The evidence shows that the insulation on a drop-light wire, such as entered plaintiff's house, will, when new, protect from a voltage of about 600 volts; but this insulation had become old, and therefore would not likely, at that time, protect to that extent. The evidence shows that a person may be killed by a voltage of only 110 volts, if subjected to it while standing on a stove which contains water, but that it cannot occur if the wire is insulated as this one was. But this wire contained a greater voltage than 110 volts; just the amount is a matter of conjecture, but the result shows that it was deadly.

Defendant's local manager and representative came to the house within 10 or 15 minutes after the occurrence, and ascertained that the wires in the house contained a dangerous amount of voltage, and had it cut off. Defendant's manager expressed the belief that the voltage could not have been greater than 540 volts, but it is equally possible that it was 1,080.

The defendant was negligent and at fault for running its high-powered wire so close to the secondary wire, and so near a limb that the wires both touched the same limb. The high voltage was in that way wrongfully and negligently carried into plaintiff's residence, and resulted in the death of her daughter, due to its unsuspected presence.

The defendant must know the condition of its property and keep it safe, so that it may not do damage to others.

The law provides that "we are responsible not only for the damage" on account of "our own act, but for that which is caused * * * by the things which we have in our custody." Civil Code, art. 2317.

This article of the Code was applied to the duties of an electric light company in the case of Yates vs. Electric Light & Power Co., 40 La. Ann. 467, 4 So. 250.

In the case of Myhan vs. Electric Light & Power Co., 41 La. Ann. 964, 6 So. 799, 7 L. R. A. 172, 17 Am. St. Rep. 436, the court, referring to the unknown character of the danger which exists from high voltage wires, and the duty of the electric light company to find out and guard against dangerous conditions, said:

"At any rate, it was the duty of the defendant company to have known of the dangerous character and condition of the wires. The knowledge which they ought to have had, the law presumes, juris et de jure, they had. Even had the company's representatives sworn that they did not know of the same, such ignorance on their part would not have exculpated them. A superior is presumed to know, and under the law knows, that which it is his duty to know, namely, whatever may endanger the person and life of his employee in the discharge of his duties."

In this case plaintiff's daughter was not an employee of defendant. The application of the case is that it was defendant's duty to know existing conditions in its wires, and to keep them safe, so that unsuspecting parties, having occasion to take hold of a drop wire for any reasonable purpose, may not be killed by it.

In the case of Clements vs. Electric Light Co., 44 La. Ann. 692, 11 So. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348, the court, having in mind the same idea of care on the part of an electric company said: "He had a right to believe they were safe and that the company had complied with its duties specified by law."

In this case plaintiff's daughter, engaged in cleaning the stovepipe, acted on a natural impulse in taking hold of the wire while standing on the stove. Under ordinary circumstances it would have been perfectly safe for her to do it, but, defendant having allowed its wire, through negligence, to become charged with a deadly voltage, against which the insulation was without effect, the plaintiff's daughter was killed by it, while not suspecting the slightest danger.

In Lapouyade vs. New Orleans Ry. & Light Co., 138 La. 237, 70 So. 110, the court, referring to the act of an electric light company in failing to obey an ordinance requiring it to keep its high-powered wires insulated at all places of contact, in a case in which it was shown that a party had taken hold of a wire, not insulated as required, but which the party had no business to take hold of, and who was killed as a result of having done so, used the following language:

"A different rule would have had to be applied in this case if the trespass had been so very slight as to have been purely technical; and such a one as anybody might be guilty of inadvertently or even intentionally, on the assumption that no harm could possibly result, and that the owner of the property would certainly not object."

In the case cited, the court found that there were signs which indicated that the hanging wire was not intended to be handled by parties whose business did not make it their duty to do so, and which amounted to a warning to let it alone; that the meddler in that case, in taking hold of the wire for the purpose for which he was shown to have done it, was in fact a trespasser. Defendant contends that the proximate cause of the death of Bessie Rosa Bel was her act in taking hold of its wire, which it had placed in her mother's kitchen for lighting purposes,

while standing on a stove, for the purpose of looking to see if the soot had all been removed from the stovepipe; the stove containing a water pipe with water in it, making it a deadly ground.

Authorities are cited on the question of proximate cause. We do not think the authorities and argument on the subject appropriate to the situation. The act of plaintiff's daughter did not, in our opinion, amount to a fault. Her daughter had no reason to suspect that there was danger in taking hold of the drop wire above the socket, for the purpose stated. Her act was not meddling as in the case above cited; she was not doing something that she had no right to do, but something she had a right to do; and, if the drop wire had contained only 110 volts, the insulation would have rendered the act harmless. But this wire had become, due solely to the fault and negligence of the defendant, charged with a voltage so high that the insulation with which it was provided was no protection. It was not intended to carry such a voltage. It had been permitted to become a deadly menace to those in the habit of using it, without the slightest suspicion on their part. The proximate cause of the occurrence in question was the neglect of the defendant in that respect.

As for the contention that plaintiff's daughter may have lost her life, due to some other cause than the shock from defendant's wire, it is sufficient to say that no cause for the death of plaintiff's daughter appears, except that which resulted from her taking hold of the drop wire, which she had a right to suppose it was safe to do, when due to defendant's fault it had become deadly to do so.

In regard to the contention that plaintiff's daughter pulled off the socket in falling, and by so doing exposed her hand to the unprotected voltage at the ends of the wire, and in that way lost her life as a result of her act in so doing, the argument implies fault and negligence on the part of plaintiff's daughter in pulling off the socket. Our view of the matter is as above stated. The socket was jerked from the end of the wire, in our opinion, as the result of an involuntary and unconscious grip, taken 10 or 12 inches above the socket, after plaintiff's daughter had received a shock, and for which her daughter was not accountable nor at fault.

Judgment appealed from is in our opinion correct.

———

ON APPLICATION FOR REHEARING.
PER CURIAM:

After mature consideration of the application of defendant, appellant, for a rehearing, the judgment appealed from is amended as follows:

The item of $7,500 is reduced to $5,000, the item of $290 to remain as rendered.

With this amendment, the application for a rehearing is refused.