H. B. KNOWLTON, Administrator of the Estate of Charles
Downs, Deceased, v. DES MOINES EDISON LIGHT COM-
PANY, Appellant.

Electric Light Company: DEGREE OF CARE REQUIRED IN CONSTRUC-
TION AND MAINTENANCE: *Negligence.* The duty of an electric
light company to use reasonable care to prevent the escape of
an electrical current of 2,500 voltage from its wires in such a
way as to injure persons lawfully within the reach of such
danger involves the use of a high degree of diligence and fore-
sight in the construction and maintenance of its lines in a safe
condition.

SUBMISSION OF QUESTION OF REASONABLE CARE: *Evidence.* In an
action against an electric light company for causing the death
of a workman on another line it was not prejudical to the
company to submit to the jury the question of whether it had
exercised reasonable care in the insulation of its wires, there
being evidence to show that such insulation was insufficient.

WATERPROOF INSULATION. A city ordinance required that the wires
of electric light companies should be covered with "water-
proof" insulation. The evidence showed that this covering
would probably have prevented the passing of the current by
contract with another wire. It was also shown that the wires
of defendant company were provided with "weatherproof" in-
sulation. *Held,* that the court properly charged, in an action
for causing the death of a workman on another line, that if
the insulation used was not "waterproof" insulation, as re-
quired by ordinance, and was not so effectual in preventing
the escape of an electrical current as the "waterproof" insula-
tion, then the defendant was negligent.

*Jury question.* It was proper to leave to the jury the determina-
tion of what was meant by "waterproof" insulation.

Freedom from Contributory Negligence: *May be proven by cir-
cumstances.* The plaintiff was not required to establish free-
dom from contributory negligence by direct affirmative proof
of particular acts of care by the workman, as the circum-
stances surrounding the accident might have been sufficient to
justify the inference of due care.

SAME. In an action against an electric light company for the
death of a workman on another line by coming in contact

with its wires, it was proper to charge that the probability or possibility of there being a current on the wires at the time should be considered in determining whether the workman had used due care in allowing such contact without having first insulated himself.

*Same*    A lineman of a telephone, repairing wires attached to the same poles as electric light wires, was not negligent in allowing a wire which he was handling without insulation to come in contact with the light wire, if he was justified in believing that the insulation which the light company was required by ordinance to use on its wires was sufficient to prevent the escape of the current by contact of another wire, and that this particular wire was so insulated.

SAME.    If a lineman of a telephone company in working near electric light wires was justified in believing that the current would not be turned on the light wires while he was at work, he was not required to guard against such current.

*Jury Question.*    Whether or not he was so justified was a question for the jury.

Review on Appeal: PASSION AND PREJUDICE: *Reduction on verdict below.*    The fact that a verdict of $15,000 against an electric light company for personal injuries causing death was cut down by the trial court to $7,500 was not sufficient evidence of passion and prejudice in rendering the verdict to require the entire verdict to be set aside.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

· TUESDAY, JUNE 3, 1902.

PLAINTIFF, as administrator of the estate of one Charles Downs, deceased, sues to recover damages caused to the estate by the death of Downs, resulting from an electric shock received from defendant's wires by reason of the negligence of defendant, and without negligence on the part of deceased.    A verdict was rendered for the plaintiff in the sum of $15,000, and the trial court gave the plaintiff the election of accepting judgment for $7,500 or submitting to a new trial.    Plaintiff elected to accept the reduced judgment, and defendant appeals.—*Affirmed.*

*Connor & Weaver* for appellant.

*Clark & McLaughlin* for appellee.

McCLAIN, J.—In November, 1899, the deceased was in the employ of the Mutual Telephone company as lineman, and was sent with another lineman, under the direction of a foreman, to repair the wires of the telephone company at a place where the telephone wires of his company and of another telephone company were supported on poles, which also furnished support to a lighting circuit of the defendant company, as well as to the cross wires supporting the trolley wire of a street car company. By ordinance of the city, this common use of the poles was authorized, and it is immaterial, therefore, that the poles did not belong to the defendant, their right to the use thereof being unquestioned. The accident causing the death of the deceased happened in the forenoon, and it appears without question that, the night before, deceased and other linemen of the Mutual Telephone Company had visited this place and discovered some "trouble" with the company's line, due to the escape of electricity from defendant's wire to a tree near which the telephone wires were also stretched. At that time the telehone wires were cut out between the poles on either side of the tree, and when deceased and his fellow workmen came back to this place on the morning of the accident they first cut away the portion of the tree which interfered with the wires, and then proceeded to replace the telephone wires which had been cut out the night before. For this purpose Dean, a fellow lineman of deceased, climbed the telephone pole, to which a wire from the central station was still attached, and connected therewith one end of a wire which had been cut out the night before, while deceased, on the ground, proceeded to straighten out the wire and stretch it to the next pole, for the purpose of attaching to it enough more

wire to make the connection with the remainder of the line. The supports for the telephone wire which was being stretched were higher on the pole than the support of the defendant's electric lighting wire, and while deceased was stretching out the telephone wire from its point of connection on the pole where it had been attached, walking along the ground towards the next pole, the telephone wire crossed and came in contact with defendant's electric lighting wire, and deceased received a fatal shock of electricity passing from the electric lighting wire through the telephone wire, and through his body to the ground. Deceased was handling the telephone wire without rubber gloves, and without taking any precautions to prevent the grounding of the electric lighting current through his body. With regard to the current in the electric lighting wire, it appears that it had been turned on the night before when the telephone wire was cut out, for at that time the electric lights were burning, although the line, which had recently been constructed, was not yet in full operation; but at the time when deceased and his co-employes commenced to replace the telephone wire, just before the accident, the electric lighting current was not on, for the lamps were not burning. However, at some time during the prosecution of the work of replacing the telephone line at this place the electric lighting current was turned on by the employes of defendant for the purpose of testing the circuit, and the escape of electricity from defendant's wire to the telephone wire caused the death of deceased.

Several allegations of negligence were made in the plaintiff's petition, one of them being the act of defendant's employes in turning on a current in the electric lighting wire in the daytime, when deceased would have no reason to expect that there would be a current in such wire, and without taking any precaution to ascertain whether any one was working along the line of the circuit, or to warn persons so working that the current was being

turned on.   But the trial court directed the jury not to consider as negligence this action on the part of defendant's employes, and submitted the case on the theory that defendant had the right to transmit an electrical current through its wires in the daytime when such current was not necessary for electric lighting purposes, without ascertaining whether the transmission of such current would in itself be dangerous to persons not in its employ working along the line, and we must determine this appeal on that theory of the case.   The allegations of negligence on the part of defendant which were submitted to the jury were in establishing and maintaining electric lighting wires without proper and sufficient insulation, in view of their proximity to wires of other companies, and the character of the current said wires were intended to convey, and also in failing to keep its wires thoroughly and properly covered with "waterproof" insulated material and "insulated with the best water insulation," as required by ordinance of the city.   Aside from any provision in the city ordinance, it was the duty of defendant to use reasonable care to prevent the escape of electricity from its lines in such way as to cause injury to persons who might lawfully be within the reach of the danger incident to the escape of electricity from such lines; and in view of the highly dangerous character of an electrical current of such power as to operate arc lights, which was in this case shown to be of about 2,500 voltage, the exercise of reasonable care on the part of defendant involved the use of a high degree of diligence and foresight in the construction and maintenance of its lines in a safe condition.   *Denver Consol. Electric Co. v. Simpson*, 21 Colo. 371 (41 Pac. Rep. 499, 31 L. R. A. 566); *Perham v. Electric Co.*, 33 Or. 451 (53 Pac. Rep. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730). In some cases the duty of electric lighting and power companies to prevent the escape of dangerous currents of electricity is likened to that of a keeper of a ferocious

animal. See *City Electric Co. v. Conery*, 61 Ark. 381 (33 S. W. Rep. 426, 31 L. R. A. 570, 54 Am. St. Rep. 262); Keasbey, Electric Wires, sections 239, 249. But it is certainly not the rule of law applicable to such cases that the company is absolutely liable for any injury done by escaping electricity. Such a company is engaged in conferring a public benefit, and, although it is by the nature of its business bound to exercise great care, yet the care required is after all, only that reasonably consistent with the performance of its functions. It should, along the highway and in proximity to places where persons may rightfully go, insulate its wires, or by putting them out of the way avoid danger to persons who without negligence might otherwise be injured by casually coming in contact with them. *Clements v. Light Co.*, 44 La. Ann. 692 (11 South. Rep. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348); *Griffin v. Light Co.*, 164 Mass. 492 (41 N. E. Rep. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477). And when the lighting wire is supported on poles which support other electrical wires, which must be attended to by linemen of other companies, the company operating the lighting wire is bound to know that there is danger of such linemen coming in contact with the lighting wire and being injured thereby, if it is not properly insulated, and it will be negligent if it fails to use proper precautions against injury to such linemen of other companies. *Illingsworth v. Light Co.*, 161 Mass. 583 (37 N. E. Rep. 778, 25 L. R. A. 552); *Neward E. Light & Power Co. v. Mason's Adm'r*, 39 U. S. App. 416 (23 C. C. A. 649, 78 Fed. Rep. 74). But the duty to insulate for the protection of persons who may come in contact with the wires does not exist as to parts of the line where no one could reasonably be expected to come in contact with the wire. *Hector v. Light Co.*, 174 Mass. 212 (54 N. E. Rep. 539, 75 Am. St. Rep. 300).

In the cases we have referred to, the complaint has been as to failure to cover joints with insulating material, or to

keep the insulation complete and perfect at points where persons would be likely to come in contact with the wires. There is no particular conflict in the authorities as to the duty of electric lighting companies in this respect, but the controversy in this case relates to a matter of a somewhat different character. It is contended that the method of insulation, that is, the kind of covering put on the wire used by defendant on its line, was not sufficient, and that by reason of its insufficiency the electrical current passed from the lighting wire to the telephone wire so as to cause the death of deceased, whereas it would not have done so had a different kind of insulation been used. The court did not instruct the jury directly on the theory that it was the duty of the defendant to use an insulating material that would absolutely prevent the escape of the current under such circumstances, but left it to the jury to say whether, in the use of such wire as was used, the defendant exercised reasonable care, and of this defendant has no cause to complain.

But it further appears that at the time of the accident the ordinances of Des Moines required that the wires of electrical lighting companies should be covered with "water-proof" insulation, and there was some evidence to the effect that such a covering consists largely of rubber, and would probably have prevented the passing of the current in this case from the lighting wire to the telephone wire, while the evidence shows that defendant's wires were in fact provided with what is called "weatherproof" insulation, not composed to any extent of rubber, but consisting of a kind of webbing or netting, woven around the wire, and saturated with tar, or some waxy substance, and that this kind of insulation is not so effectual in preventing the passing of an electric current between two wires in contact; and the court charged the jury on the theory that if the insulation used was not "waterproof" insulation, as required by the ordinance,

and was not as effectual in preventing the passage of an electrical current to a wire in contact as a ''waterproof'' insulation would be, then the defendant was negligent. With reference to this theory of the court it is contended for appellant that the adoption of some other form of insulation than that prescribed by the ordinance would not necessarily constitute negligence. But it seems to us plain that the safety of persons who might be in danger by reason of contact with the wires, was within the contemplation of the council in passing the ordinance, and that a violation of the provisions of the ordinance would in itself be negligence. *Clements v. Light Co.*, 44 La. Ann. 692 (11 South. Rep. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348); *Mitchell v. Electric Co.*, 129 N. C. 166 (39 S. E. Rep. 801); *Smith v. City of Pella*, 86 Iowa, 236; *Reynolds v. Hindman*, 32 Iowa, 146; *Dodge v. Railroad Co.*, 34 Iowa, 276; *Correll v. Railroad Co.*, 38 Iowa, 120.

Error is also assigned on the action of the court in leaving it to the jury to determine what was meant by ''waterproof'' insulation, as required in the ordinance, but in this there was no error. While it is the duty of the court to construe the language of an ordinance, it is proper to leave the application of that language to the facts, where such application depends on evidence, to the determination of the jury. It was contended for defendant in the lower court that the requirement as to ''waterproof '' insulation was inserted by inadvertence, but we find no support for any such contention.

There was then evidence proper for the jury on the question of whether defendant was negligent in not using the proper kind of insulation. But to entitle the plaintiff to recover it was also essential to show that deceased, at the time of the injury, was in the exercise of due care, and it is with reference to this matter that the the more serious complaint is made on the part of appellant as to the action of the court and jury. This is

a question wholly independent and distinct from that of the defendant's negligence. The burden of proof on this question was of course on the plaintiff. In the absence of any evidence as to negligence, or want of negligence, of the deceased, the presumption arising from the instinct of self-preservation might be effectual, but here the evidence clearly shows the circumstances under which deceased received his injury, and there is no occasion to apply the presumption. *Bell v. Town of Clarion*, 113 Iowa, 126. It is contended for the appellant that, excluding this presumption, there is no evidence of the care on the part of deceased, and that it affirmatively appears he omitted precautions which he might have taken to avoid danger, such as wearing rubber gloves, standing on a dry board or on the wagon which he and his fellows had brought to the place instead of on the damp ground, using a rope to keep the telephone wire from coming in contact with the electric light wire and the like; and that therefore a verdict for defendant should have been directed on motion. This contention is supported by reference to a case quite similar in its facts, that of *Judge v. Lighting Co.*, 21 R. I. 128 (42 Atl. Rep. 507). But it is not true that the doctrine as announced in that case, and recognized in this court by a long line of decisions, that the burden of proving freedom from contributory negligence in cases of personal injury requires direct affirmative proof of any particular acts of care on the part of the person injured. Evidence of the facts and circumstances connected with and surrounding the injury may be such as to justify the inference of due care. *Gorman v. Railroad Co.*, 78 Iowa, 509; *Fish v. Railway Co.*, 96 Iowa, 702. In the case before us such facts and circumstances were fully shown, and in this respect it is distinguishable from the *Judge Case*, above cited, for in that case there was no evidence as to how the accident occurred. There is another distinction between the cases which is very important. In the *Judge Case* it

does not appear that the electric light wire was insulated, or that deceased had any reason to suppose that it was insulated, while here, as we have pointed out, it appears that it was the duty of defendant to have its wire covered with waterproof insulation, which would have afforded at least a better protection than the covering actually used.

It is clear that the defendant's duty to insulate its wires as required by the city ordinance is of controlling importance, not only with reference to the question of defendant's negligence, but also in connection with the question of contributory negligence of deceased. If deceased was justified as a reasonably prudent man in believing that such insulation as the ordinance required would make a contact between the telephone wire which he was handling and defendant's wire free from danger to him, and had reasonable ground to believe that defendant's wire was thus insulated, then, plainly, no duty to avoid contact between the two wires was imposed upon him. Whether he must have had good reason to believe, as the evidence tends to show, that the defendant had not complied with the ordinance in this respect, and whether he should have known as an experienced lineman that such contact was dangerous no matter what the character of the insulation, were plainly questions for the jury. Certainly no court would be justified in saying of its own knowledge, as matter of law, that there was necessarily such danger in a contact between the two wires under any possible circumstances as to make failure to avoid such contact *per se* negligence, and there was not such conclusive evidence that deceased must have known it would be dangerous as to justify this court in setting aside the verdict for want of support in the evidence on this point.

The same reasoning applies to the action of the court in directing the jury to consider the evidence as to the knowledge of deceased with reference to whether there

was a "probability or possibility that defendant might turn the current on its wire." If as a reasonable man he was justified in believing that no current would pass through defendant's wire while he was at work about it, then he was not required in the exercise of reasonable care to take precautions against such current. Whether or not he was justified in such belief was a question for the jury under the evidence. It is not enough to say in response to this that defendant had a right to turn its current into this wire in the daytime, and that it would not constitute negligence on defendant's part to do so. The negligence of defendant consisted in not properly insulating its wires, and we are now considering the danger of a day current only as bearing on the care required of deceased. Certainly, there may be acts which one has a right to do, but which another is not reasonably bound to anticipate. We think, therefore, that the court did not err in calling the attention of the jury to the evidence as to the probability or possibility of a day current as one of the circumstances to be taken into account in determining whether deceased exercised due care. Under the law and the testimony of the witnesses, the court was justified in directing the jury to consider the evidence as to these · and other matters in determining whether there was contributory negligence on the part of deceased. See *Illingsworth v. Light Co.*, 161 Mass. 583 (37 N. E. Rep. 778, 25 L. R. A. 552), Keasbey, Electric Wires, sections 264, 265. In support of the view that, in the absence of any reason to believe the contrary to be true, deceased had a right to rely on the defendant's wire being properly insulated, the following cases are directly in point: *Mitchell v. Electric Co.*, 129 N. C. 166 (39 S. E. Rep.801); *Will v. Illuminating Co.* — Pa. — (50 Atl. Rep. 161); *Clements v. Light Co.*, 44 La. Ann. 692 (11 South. Rep. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348); *McAdam v. Electric Co.*, 67 Conn. 445 (35 Atl. Rep. 341). The cases of

*Anderson v. Light Co.*, 64 N. J. Law 664 (46 Atl. Rep. 593), and *Wood v. Electric Co.*, 185 Pa. 529 (39 Atl. Rep. 1111), in which contributory negligence of persons injured by an electric current received from a wire was held as matter of law to be such as to preclude recovery on account of such injuries, involve quite different facts from those before us. In each it appeared that the person injured had voluntarily touched the wire out of mere curiosity or bravado, to ascertain if it were charged, or to prove it not dangerous. Certainly, one who without any occasion to do so takes such risk is not on the same footing as one who is required to engage in the business of working about an electric light wire always attended with danger of some accident, no matter how little to be expected in the particular instance. Of course there was in this case no question of assumption of risk, for deceased was not a servant of defendant, and for this reason the case of *Junior v. Power Co.*, 127 Mo. 79 (29 S. W. Rep. 988), is not in point.

Other errors in the giving of instructions and the admission or exclusion of evidence are argued, but we think that what has been said sufficiently indicates the views of this court on the questions raised.

Complaint is made as to the amount of the judgment, even after the acceptance by plaintiff of the reduction required by the court, but without going into a discussion of the question it is enough to say that we find the matter was properly submitted to the jury, and that, if the verdict had been for not to exceed the amount which was finally allowed, it would have been sustained by the evidence. That a return of an excessive verdict does not necessarily show such passion and prejudice as to require the entire setting aside of the verdict, see *Doran v. Railway Co.*, 117 Iowa, 442.—AFFIRMED.