## LADOW v. OKLAHOMA GAS & ELEC. CO.

No. 692. Opinion Filed January 10, 1911.

1.  **PROPERTY—Conditions of Ownership—Welfare of Society.** As a general rule, the owner of property may retain to himself its exclusive use and occupation, but as title and ownership in property depend upon municipal law for their recognition and protection, its use and enjoyment and the rights and duties of owners are subject to conditions imposed by law for the welfare and rights of others.

2.  **ELECTRICITY—Negligence—Deadly Wires—Duty to Insulate.** While it is generally true that where no duty is owed, no liability for negligence can arise, yet duties and liabilities grow out of circumstances and conditions, and where an electric light company is using a current so powerful that contact with its appliances and wires is deadly or dangerous to life and limb, it owes a duty to one, not a wanton trespasser, who, in the ordinary pursuit of a lawful occupation, is in a place where he has a legal right to be, and liable to come in contact with such wires, to so insulate them as to render them harmless.

3.  **SAME—Care Commensurate With Danger.** The degree of care to prevent injury to others required to be exercised by those making a business of handling and selling electricity for a profit, calls for much greater precaution and care in its use than if the property involved was of a less dangerous character. The duty and

care demanded is commensurate with the danger and the injury which may follow as a consequence of neglect.

4. **SAME.** While not an insurer against unforeseen and unavoidable accidents, an electric light company using the public streets of a municipality for its poles, wires, and appliances, in conducting its business, is required to exercise the highest degree of care, and to maintain in the best possible condition the best appliances known to the science, to render its business safe, and to use a degree of care, caution, and circumspection in keeping with the dangerous character of its business.

5. **SAME—Evidence of Negligence—Lack of Insulation.** Absence of insulation on an electric wire, in violation of an ordinance, is prima facie evidence of negligence.

6. **SAME—Contributory Negligence—City Ordinances—Lack of Permit to Handle Wires.** Ordinances of a city provided a penalty for any person other than the owner, without a written permit, touching, handling, molesting, interfering with, etc., any wires or cables used for the purpose of transmitting electric current for light, heat, or power, and provided for the full insulation of all wires of such company so that they would be harmless to the touch of individuals. An employee of a telephone company, without the written permit provided for, in the ordinary course of his occupation, and in a place where he had a right to be, unintentionally came in contact with an uninsulated wire of the electric light company and was injured. In an action for damages, the court instructed the jury, in substance, that unless it found from the evidence that the plaintiff held a written permit, he was prohibited from touching, handling, molesting, or interfering with the wires or cables of the defendant company, and the said company was not guilty of negligence as to plaintiff for its failure to insulate the wires with which plaintiff came in contact, because it owed to him no duty except not to purposely injure him, and also that if, without such written permit, the plaintiff stepped upon the cross-arm of defendant's pole, for his own purposes, he was thereby violating the law and was guilty of negligence such as would be a bar to his recovery, notwithstanding the fact that defendant was found negligent in failing to insulate its wire. Held, error.

7. **APPEAL AND ERROR—Erroneous Instructions—When Reversible.** The insistence by a defendant that, notwithstanding certain instructions excepted to by the plaintiff were erroneous, the error therein was harmless, for the reason that no other verdict, under the evidence, could have been sustained, will not be allowed if, under the evidence in the record a verdict found for plaintiff would not be set aside for want of evidence reasonably tending to support it.

8. **ELECTRICITY—Negligence—Electric Light Wires—Lack of Insulation—Injuries to Telephone Lineman.** An electric light com-

pany which maintains a pole, on which its wires are strung, so near a pole similarly used by a telephone company that the employees of the latter company, in the performance of their ordinary duties, are liable to come in contact with such wires, owes such employees the duty of so insulating its wires as to render them harmless to the touch, and is bound to take notice that the employees of the telephone company, in the line of their duty, are liable and likely to come in contact therewith, and in a case where an emp'oyee of such telephone company, in the usual and ordinary performance of his duties and not in the commission of a wanton trespass, comes in contact with an uninsulated wire of the defendant company and is injured, he is not guilty of such contributory negligence as will bar recovery.

(Syllabus by the court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Action by Ben R. LaDow against the Oklahoma Gas & Electric Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*G. A. Paul* and *T. F. McMechan,* for plaintiff in error.
*Flynn, Ames & Chambers,* for defendant in error.

DUNN, C. J. This case presents error from the district court of Oklahoma county, begun August 10, 1905, trial being had to a jury February 28, 1908, judgment rendered in behalf of the defendant in error, which was defendant in the court below, to reverse which the plaintiff has brought the case to this court by petition in error and case-made. The action is one for damages alleged to have occurred by reason of defendant's negligence. The facts out of which the case arose are substantially as follows:

The Pioneer Telephone and Telegraph Company owns and operates a system of telephones in the city of Oklahoma City. The defendant herein owns and operates an electric light plant in said city, and each of these companies has a line of poles and wires strung along the south side of an alley of the said city which at its east end opens on the west side of Broadway, between Main and First streets. At the edge of the sidewalk, just on the inside of the alley, where it enters Broadway, the defendant had placed

a pole about thirty feet high, with three cross-arms placed at the top thereof a short distance apart, on which were strung wires used for the purpose of carrying the electric current. About six inches west of defendant's pole, up the alley from the street, there had been placed by the Pioneer Telephone and Telegraph Company, a pole about forty-five feet high, with three cross-arms supported by an iron brace upon which were strung telephone wires, cable suspensions, and messenger wires. It was not just certain which of these poles was placed first, and the jury, to a special question asked on that point, answered that it did not know. Both companies used this alley for its poles under a joint arrangement, the electric light wires being attached to poles of the telephone company, except at the point at the east end of the alley, where the two poles which we have just described were located. The plaintiff, an employee of the telephone company, on the 7th day of June, 1905, walking on its wires, was engaged in pulling a messenger wire from the west end of the alley to a pole across on the east side of Broadway. On the top cross-arm of the electric light pole were three wires fastened to glass insulators, a short distance apart. These wires, or some of them, lacked proper insulation, and plaintiff, on arriving at this pole, while engaged in the work of stringing the wire, stepped from the telephone pole or wires on which he was walking onto the top cross-bar of the electric light pole, came in contact with the uninsulated wires, and received a shock which threw him to the pavement, injuring him, on account of which this action is brought.

On the trial, certain interrogatories were propounded to the jury, which, with their answers, are as follows:

"Did plaintiff's foot, while he was standing on this cross-arm, come in contact with the uninsulated end of the electric light wire? Yes.

"Did the plaintiff, while standing on the cross-arm with his foot in contact with the uninsulated end of the electric light wire, receive a shock from this wire through the uninsulated end, which caused his fall to the sidewalk below, thus producing the injuries sustained? Yes.

"Had the plaintiff, immediately before the accident, passed around the telephone pole from the west side to the east side? Yes.

"In approaching the poles at which the accident happened, had the plaintiff supported himself on the wires of the telephone company by standing and walking along and upon said wires? Yes.

"Could the plaintiff pass from one telephone pole to another while walking and standing upon the telephone wires? Yes.

"Could plaintiff have passed from the west side of the telephone pole to the east side of the telephone pole by climbing a short distance up the pole and between the pole and the brace supporting the bottom cross-arm of the telephone pole, and then down the east side of the telephone pole to the level of the wire he was stringing? Yes.

"Could plaintiff have passed around from the west side of the telephone pole to the east side of the telephone pole by standing on the telephone wires and supporting himself by holding to the telephone pole or the brace, or the wires or the cross-arms above him? Yes.

"Did the plaintiff have a written permit from the Oklahoma Gas and Electric Company permitting him to touch, handle, molest, interfere with or remove any of its wires or cables? No.

"If the plaintiff, at the time he stepped upon the cross-arm of the electric light pole, had looked, could he have seen that this cross-arm was on the electric light pole, and not on the telephone pole? Yes.

"Did the plaintiff, at the time he stepped upon the cross-arm of the electric light pole, look at the cross-arm and pole upon which he was stepping? Do not know.

"Did the plaintiff, when he stepped upon the cross-arm of the electric light pole, see that it was a separate pole from the telephone pole? Do not know."

There was testimony to the effect that on a former occasion an employee of the telephone company had been nearly knocked off of the identical pole by having come in contact with the exposed wires and that this information had been carried to the defendant company; that this defective condition had existed for possibly a year, but that the company, intending to rebuild its line, declined to correct the deficiency. In addition to the ultimate facts as found

by the jury in its special finding, the details of the accident are given by plaintiff in his examination as follows:

"Q. Was the electric light wires swinging on the same poles that the telephone wires were? A. Not on this same pole. Q. Was they on the other poles along there? A. They were on most of them. Possibly on all of them. The light people had their small poles in between ours. Q. They occupied those poles too? A. Yes, sir. * * * Q. In getting down there, could you see the electric light pole sitting up against this other pole? A. I didn't know there was any electric light pole there. Q. You didn't? A. Not until I was told so up in my bed up in the hospital. Q. What did you believe about that cross-arm you saw there? A. I looked down as I was going along the pole and saw the cross-arm, and naturally supposed it was a Pioneer pole. Q. You thought it was a Pioneer pole? A. Yes, sir. Q. Never had been there before? A. No, sir. * * * Q. Did you know the character of the wires on that cross-arm when you stepped on it? A. The character of the wire? Q. Yes; whether electric light wires or not? A. I knew there were electric wires on that lead underneath. Q You supposed it was a cross-arm on the telephone pole? A Yes, sir. Q. You couldn't see the small pole from the west? A. No, sir; I didn't see the pole at all. Q. How was you standing when you received this shock, if you can remember? A. I had passed my left foot around first. Q. How close to the telephone pole; was you hugging the pole or half an arm's length from it? A. In getting around the pole, I probably be. After I got my left foot placed I had my right hand holt of the messenger wire to hang on to while I reached with my left hand for the end of the hand-line. Q. And then what happened? A. Well, I got up against it, I guess. Q. Do you remember any more? A. Well, I received a shock that drew me terrible. I felt as though every muscle in my body was drawn, and that was practically the last I knew, although I guess I hollered; but that was the last I do know."

On cross-examination the plaintiff, in response to interrogatories, gave the following evidence:

"Q. I understood you to say, Mr. LaDow, that you thought this cross-arm carrying the electric wire on which you stepped was attached to the telephone pole. Is that correct? A. Yes, sir. Q. And you didn't find out afterwards until after the ac-

cident happened? A. Not until I was told so at the hospital, is the first I knew of it. Q. That was the first you heard they were separate poles? A. Yes, I supposed they were the same as some of the others back there in the alley."

An ordinance of the city made it the duty of the defendant to keep "all wires used for the purpose of transmitting electricity fully insulated by such outer covering and protection as will make them harmless to the touch of individuals and powerless to ignite any combustible material." Another ordinance of the city provided that "no person other than the owner shall have the right to touch, handle, molest, interfere with, or remove any wires or cables strung within the city limits of the city of Oklahoma City, for the purpose of transmitting electric current for the transmitting of light, heat, and power, or for the transmission of telegraphic or telephone messages without a written permit from the company or companies, owning, controlling, or operating such wires or cables."

After the evidence was submitted, the court gave to the jury certain instructions, among which were two, which were numbered 4 and 5, which were based upon the ordinances above noted. It is the giving of these instructions that plaintiff contends most strenuously was prejudicial error, resulting in a verdict for defendant, when it otherwise would have been for him. These instructions read as follows:

"4. You are further instructed that under the law in force in the city of Oklahoma City, at the time of this injury that the plaintiff, unless you believe from the evidence that he held a written permit, was prohibited from touching, handling, molesting or interfering with the wires or cables of the defendant company, and if you believe from the evidence that said plaintiff had no such written permit, then the defendant was not guilty of negligence as to said plaintiff for leaving the wire or wires in controversy uninsulated, because the defendant owed to said plaintiff no duty in the premises except not to purposely injure him.

"5. You are further instructed that if you believe from the evidence that plaintiff stepped upon the cross-arm of the defendant's pole as a matter of convenience to himself or for the

purpose of more easily transacting the business in which he was engaged, and without written permit from the defendant, that said plaintiff in such case was violating the law, was guilty of negligence by reason thereof, and that such negligence is a bar to his recovery against the defendant, notwithstanding the fact that you may believe from the evidence that the defendant, itself, was negligent in maintaining said wire."

The language of instruction No. 4, as we view it, was tantamount to an instruction to the jury to return a verdict for the defendant, for the reason that the testimony showed conclusively that plaintiff did not have the written permit mentioned in the instruction and that the defendant did not purposely injure him, and as the defendant could not be liable to plaintiff unless these conditions existed, then under this instruction there was left for the jury nothing else than to return the unanimous verdict which it did. The ordinance upon which this instruction is predicated, in our judgment, will not bear the construction here given it. To allow such construction would make of this ordinance a shield to the electric light company in every case, notwithstanding the grossest character of negligence, where a party injured was without such permit, for of course it would never wantonly injure anyone with its appliances. It would reduce those who could recover against the company at any time or under any circumstances, for its negligence, to the number who held written permits to touch or handle their appliances, and we do not believe that it can possibly be held to mean this. As we view it, the purpose of this ordinance was not to afford a shield to the company from the results of its own negligence, but was to protect its property from the intentional, wrongful, meddlesome, or the unlawful or wanton interference of others, and to punish those who violated it, leaving the question of negligence as between it and others at large as it was prior to the passage of the ordinance. So that, if the defendant would be liable for negligence prior to the passage of this ordinance in cases of this character, this liability would be in no wise altered after its passage.

Taken in this connection, instruction No. 5 was likely to

mislead the jury by reason of the fact that included therein in conjunction with the declaration that if the plaintiff stepped upon the cross-arm of defendant's pole as a matter of convenience to himself, there was connected the proviso that if he was without the written permit from the defendant, that this in itself constituted a violation of the law, making him guilty of negligence, thereby precluding recovery, even though the jury might find that the defendant itself was negligent. It is true that some of the other instructions made a different declaration of the law than that given in the ones criticised, but the unanimous verdict of the jury convinces us that it followed these instructions, rather than the others, and to our minds the giving of the same was error.

Counsel for defendant, however, invoke the rule that, if under all of the evidence the verdict could not have been otherwise than as it was, the giving of erroneous instructions will be deemed immaterial. This contention can be sustained only by a finding that, if on the evidence now before us a jury had returned a verdict for plaintiff, which on a motion for a new trial had received the sanction of the trial court, the same would be reversed as unsupported, notwithstanding in its favor was considered all the evidence in support thereof and all reasonable deductions. This insistence necessitates a further examination of the record. Counsel for plaintiff argue the case purely from the standpoint of negligence of the defendant and the innocence of plaintiff of any contribution to his injury, while counsel for defendant insist that plaintiff was a trespasser upon its pole, cross-arm, and wires, and that it owed to him no duty not owing to a trespasser, and, hence, plaintiff's injuries were brought about by his own acts, and that he cannot, of right, hold defendant responsible therefor. As a primary proposition in the case, it is manifest that, before defendant could be negligent toward plaintiff, there must have been a duty owing from it to the plaintiff. In the absence of any duty, there could be no liability. Negligence would be the omission on the part of defendant to perform this duty;

therefore, our first inquiry must be to determine whether or not the defendant owed a duty to plaintiff which it failed to discharge.

The Court of Appeals of Kentucky, in the case of *Bransom's Adm'r v. Labrot, etc.,* 81 Ky. 638, said:

"As a general rule, the owner of land may retain to himself the exclusive use and occupation of it; but as property in lands depends upon municipal law for its recognition and protection, the use and enjoyment of it are subject to conditions imposed for the welfare and rights of others."

What this welfare is, and rights are, cannot be reduced to any definite, certain rule, but depend in all instances upon the particular circumstances of the case at hand. For instance, one who invites another to his premises for the sole benefit of the owner of the premises owes to the person invited the very highest possible degree of diligence to see to it that he is not injured by the condition of the place to which he is called. And one who goes to the premises of another upon a mission mutually advantageous is entitled, at the hands of the occupant of the premises, to have him exercise ordinary diligence, to have them safe for the reasonable use of the occasion, and will be entitled to hold the occupant liable for ordinary negligence in a failure to meet this requirement. On the other hand, the general rule is that where premises are visited by a person on his own business, of his own pleasure, and without invitation, the owner will owe to him slight diligence only, and will be liable to him for gross negligence only.

The foregoing express the general rules recognized at common law under the conditions mentioned. All through them all, however, modifying and limiting, runs the doctrine that the proper diligence and due care in any case is dependent upon and determined by the consequence or probable result of neglect. In other words, an increase of the danger and evil results of negligence increases the degree of care required to meet the duty to be borne by the responsible party. The rule thus announced finds support in a number of authorities: Keasbey on Electric Wires,

sections 242 and 248; 2 Joyce on Electric Law (2nd Ed.), sec. 734; *Hydraulic Works Co. v. Orr et ux.*, 83 Pa. St. 332; *Schilling v. Abernethy,* 112 Pa. St. 437; *Turton v. Powelton Electric Co. et al.*, 185 Pa. St. 406; *Union Pacific Ry. Co. v. McDonald,* 152 U. S. 262; *Uggla v. West End Street Ry. Co.*, 160 Mass. 351; *Commonwealth Electric Co. v. Melville,* 210 Ill. 70, 70 N. E. 1052, 9 Am. Elec. Cases, 95; *Newark Electric Light & Power Co. v. Garden,* 23 C. C. A. 649, 78 Fed. 74; *Knowlton v. Des Moines Edison Light Co.,* 117 Iowa, 451, 90 N. W. 818.

The case of *Hydraulic Works Co. v. Orr et ux., supra,* was one wherein a private opening or cartway, shut in by a gate, contained a heavy platform, weighing eight or nine hundred pounds, attached by hinges within eighteen or twenty inches of the wall, and which, when lowered, fell across the cartway, but, when not lowered, stayed up against the wall, leaning so little beyond the center of gravity that a jar or a slight pull would cause it to fall forward. On the occasion out of which the action grew it so fell and injured certain children who happened to be near it. On these facts, the court in the syllabus said:

"While it is true, in general, that where no duty is owed no liability arises, this rule varies with circumstances, and where, therefore, an owner has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the question of duty then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence."

Discussing the case, the court said:

"Can it be righteously said that the owner of such a dangerous trap, held by no fastening, so liable to drop, so near a public thoroughfare, so often open and exposed to the entries of persons on business, by accident, or from curiosity, owes no duty to those who will be probably there? The common feeling of mankind, as well as the maxim *sic utere tuo, ut alienum non laedae,* must say this cannot be true—that this spot is not so private and secluded as that a man may keep dangerous pits or deadfalls there without a breach of duty to society. On the contrary, the mind, impelled by the instincts of the heart, sees at

once that in such a place, and under these circumstances, he had good reason to expect that one day or other some one, probably a thoughtless boy in the buoyancy of play, would be led there, and injury would follow—especially, too, when prompted by knowledge that a fastening was needed. Perhaps the best monitor in such a case is the conscience of one who feels, in his dreadful recollection, the crushing sense that he had left such an engine of ill to take the life of an innocent child. Such, too, is the humanity of the law, that one may not justifiably, or even excusably, place a dangerous pitfall, a wolf-trap, or a spring-gun, purposely to catch and injure even wilful trespassers poaching upon his grounds. The common feeling of mankind, guided by the second branch of the great law of love, and the common sense of jurors, must be left, in such a case, to pronounce upon the facts."

In the case of *Schilling v. Abernethy, supra,* the court in the syllabus said:

"Where one has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the rule that where no duty is owed no liability arises will not prevail; but the question of liability must be submitted to the jury, to be determined upon all the facts of the case."

The case of *Newark Electric Light & Power Co. v. Garden, supra,* was one where the Western Union Telegraph Company was the owner of a certain telegraph pole upon which a railroad company rightfully maintained several electric wires, supported by cross-arms. The Newark Electric Light & Power Company also rightfully maintained its wires upon the same pole. The court said it was unimportant how the right of each of these parties on this pole was acquired. A man by the name of Mason under the employ of the railroad company was engaged with other fellow-workmen in making a transfer of certain of the wires of his employer from the pole in question, and, while so working, stepped his right foot upon one of the cross-arms on which there was an electric wire of the defendant and was subjected to an electric shock which killed him. Defendant's wire was insulated, but the insulation was defective, and but for its exposed condition at one minute point the disaster would not have happened. There

was a verdict and judgment for plaintiff, who was the administrator of decedent's estate, and the defendant appealed.   The United States Circuit Court of Appeals of the Third Circuit, in the consideration of these facts, said:

"If, in view of the facts which have been narrated, it could be unqualifiedly asserted that, at the time and place of the accident, Mason was wrongfully upon the separate property of the defendant, and if nothing but that bare fact should be regarded, but one conclusion could be reached; for the law is well settled that, in general, the right to keep his own property in such condition as the owner may see fit is not restricted by any requirement to guard against its causing injury to one who, without invitation, actual or apparent, but as a bare volunteer or mere trespasser, intrudes upon it.   This limitation of the principle that no person may lawfully use even that which is his own so as to do hurt to another is, however, not controlling in all cases; and the duty of care, which the law imposes upon those who undertake to operate so dangerous a force as electricity, may, under some circumstances, be due to one who, technically, is a trespasser.   In such a case as this one, its special facts are for consideration, and upon them, and not solely with reference to the ownership or occupancy of the *locus in quo*, the question of duty must be determined.   'It is true that, where no duty is owed, no liability arises * * * But, as has often been said, duties arise out of circumstances.   Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property, and its openness to accident, the rule will vary.' *Hydraulic Co. v. Orr*, 83 Pa. St. 332.   It makes no difference, where the circumstances give rise to duty, that the plaintiff was 'technically a trespasser.' *Schilling v. Abernethy*, 112 Pa. St. 437, 3 Atl. 792.   The true question is:   Was he a trespasser there, in a sense that would excuse the defendant for the acts of negligence."

And after referring to the case of *Railway Co. v. McDonald*, 152 U. S. 262, 14 Sup. Ct. 619, the court said:

"The fact that, in all these cases, the courts gave due weight to the circumstances that, in each of them, the person injured was a child, would not justify us in restricting the application of the principle upon which they were decided to cases which present the same peculiarity.   The doctrine of all of them is that a duty of care may, by reason of the circumstances, be due from the owner

of property to one who is technically a trespasser upon it; and the youth of those most likely to suffer from a failure to discharge such duty is simply one of the circumstances which, when present, is to be considered with the rest. * *    We are not attempting to lay down a rule applicable to all cases; but the principle which, in our judgment, is controlling in the present one, is that any person who engages in a highly dangerous occupation is bound to take such precaution in its pursuit as a sensible man would ordinarily take to avoid doing fatal or other serious injury to one who comes upon his premises, not as a mere trespasser or positive wrongdoer, but for a purpose in itself lawful, and which the owner had reason to believe might bring him there."

To the same point is the language of the Supreme Court of Illinois in the case of *Commonwealth Electric Co. v. Melville, supra,* wherein the rule in the syllabus is declared as follows:

"Electricity is a subtle and powerful agent. Ordinary care, exercised by those who make a business of using it for profit, to prevent injury to others therefrom, requires much greater precaution in its use than where the element used is of a less dangerous character. The care must be commensurate with the danger."

The facts out of which this case arose are substantially as follows: The electric light company had, under and by virtue of an ordinance, a right to place its wires under a sidewalk. It was made to appear that there was nothing to prevent access thereto from the adjoining lot by boys or any others who desired to enter. The appellee, a boy of fourteen years of age, seeing smoke emitting from beneath the walk, due to fire produced by escaping electricity, on going to examine it, accidentally caught hold of the wire, as a result of which he was injured. It was insisted on the part of the company that the relation of the plaintiff to it was that of a trespasser or licensee, and that consequently it was not liable unless the injury resulted from some wilful or wanton act on its part. The court, however, rejected this contention, and, recognizing the rule which we have here invoked, said:

"Electricity is a subtle and powerful agent. Ordinary care, exercised by those who make a business of using it for profit,

to prevent injury to others therefrom, requires much greater precaution in its use than where the element used is of a less dangerous character. As there is greater danger and hazard in the use of electricity, there must be a corresponding exercise of skill and attention, for the purpose of avoiding injury to another, to constitute what the law terms 'ordinary care.' The care must be commensurate with the danger. 10 Am. & Eng. Enc. of Law (2nd Ed.), p. 875; *Alton Illuminating Co. v. Foulds,* 7 Am. Electl. Cas. 548, 190 Ill. 367, 60 N. E. 537; *Perham v. Portland General Electric Co.,* 7 Am. Electl. Cas. 487, 33 Oregon, 451, 53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730; *Haynes v. Raleigh Gas. Co.,* 114 N. C. 203, 19 S. E. 344, 36 L. R. A. 810, 41 Am. St. Rep. 786; *McLaughlin v. Louisville Electric Light Co.,* 8 Am. Electl. Cas. 255, 100 Ky. 173, 37 S. W. 851, 35 L. R. A. 812; *Ennis v. Receiver,* 5 Am. Electl. Cas. 325, 87 Hun, 355, 34 N. Y. Supp. 379."

And it is held by the Court of Appeals of Maryland, in the case of *Ziehn v. United Electric Light & Power Co.,* 64 Atl. 61, that:

"Where defendant electric light and power company maintained certain high-tension wires near the distributing pole of a telephone company which the latter's employees were required to climb, defendant owed such employees a legal duty to have its wires so placed and insulated as to permit them to perform their work in safety."

And in the case of *Yazoo City v. Birchett,* 89 Miss. 700, 43 So. 569, the Supreme Court of Mississippi held that:

"Where a telephone lineman, while climbing a pole of his company, was injured by coming in contact with a guy wire of an electric plant, charged with electricity escaping by reason of defective insulation, the proximate cause of the injury was the current negligently imparted to the guy wire, although he would not have been injured if he had not stood upon a step of his company touching a small abandoned wire which connected with the guy wire, thus forming a short circuit."

In the case of *Overall v. Louisville Electric Light Co.,* 21 Ky. Law Rep. 886, 47 S. W. 442, 7 Am. Electl. Cas. 251, the Court of Appeals of Kentucky in the syllabus held:

"It is the duty of an electric light company whose wires are

maintained near telephone wires to know that linemen of the telephone company must, in the course of their duties, come in close proximity with the electric light wires. It is the duty of a company maintaining and using in its wires a deadly current of electricity to furnish perfect protection at those points where people are liable to come in contact with the wires. 'The highest degree of care and skill usually exercised by prudent persons engaged in the same or similar business' is not enough.''

In the discussion of this case, the court says:

"Appellant at the time he was struck was in a place where his business required him to be, and where he had a right to be, and it was the duty of the electric light company to know that linemen of the telephone company would have to come into close proximity to its wires in attending to their duties and it was its duty to use every protection which was accessible to insulate its wires at that point, and at all points where people have a right to go for business or pleasure, and to use the utmost care to keep them so, and for personal injuries resulting from its failure in that regard it is liable in damages."

Considering the facts in this case, therefore, in the light of the principles and rule laid down in the foregoing authorities, there is but one conclusion open to us, which is that the defendant company, by maintaining its wires upon the telephone poles as well as its own along this alley as one system, and then maintaining the pole involved in the immediate proximity to the pole of the telephone company, which was loaded with wires upon which the plaintiff was required to be on account of his work, owed to him the duty to so insulate the same that he would not be injured on coming in contact therewith, and this aside from the specific notice which had been carried to it of the defective character of the insulation at this particular point. It was bound to take notice that the employees of the telephone company would, in pursuit of their usual avocation, be called on to work in immediate proximity to the wire or wires involved, and this knowledge on their part, coupled with the extreme danger of permitting them to be exposed, created the duty of insulating them, the vio-

·lation of which, on damages following as a result thereof, rendered them primarily liable.

·Counsel for defendant in their brief say that the doctrine of the case of the *Shawnee Electric Light & Power Co. v. Sears,* 21 Okla. 13, does not apply in this case, by reason of the fact that the escaping electricity in that case was on the street and at a point where the injured party had a right to be, and that the defective appliances in this case were on a pole thirty feet in the air and at a point and place where plaintiff had no right to be and where defendant could not expect anyone. In our judgment, however, the underlying doctrine of both cases is the same. The injured parties in each case were at a place where they had a right to be and where defendants were charged with notice that they would be, and the defendants in each case, in the exercise of due regard for the welfare of others, should have known that, being there, they would be in imminent danger of loss of life or limb if their appliances were defective. The increase of the danger and evil consequences occasioned an increase of duty, and, hence, liability, neither of which, with a less dangerous commodity or situation, might have existed.

The ordinance passed by the city, requiring the defendant to keep fully insulated so as to render harmless to the touch of individuals all wires used for the purpose of transmitting electricity, is a recognition by the municipality of the extraordinary danger of its absence and the high degree of care which should be exercised by companies using high voltages of electricity, and a failure to comply with an ordinance of this character by an electric light company has been held to be negligence *per se,* or, as is stated by the Supreme Court of North Carolina in the case of *Mitchell v. Raleigh Electric Co.,* 129 N. C. 166, "Absence of insulation on an electric light wire, in violation of an ordinance, is *prima facie* evidence of negligence." See, also, *Clements et ux. v. Louisiana Electric Light Co.,* 44 La. Ann. 692; *Knowlton v. Des Moines Edison Light Co.,* 117 Iowa, 451, 90 N. W. 818; 1 Joyce on Electric Law (2nd Ed.), sec. 445; Croswell on the Law Relating

to Electricity, sec. 256. See, also, *Hayes, etc., v. Michigan Cent. R. R. Co.*, 111 U. S. 228, 28 Law Ed. 410.

We now come to the consideration of the contention of counsel for defendant that the plaintiff was guilty of contributory negligence. In support thereof it is claimed that the answers given by the jury to question Nos. 24, 25, and 26, which show that if plaintiff had looked, he could have seen the cross-arm on which he stepped was on the electric light pole and not on the telephone pole, and that the evidence did not show that the plaintiff looked or saw that the cross-arm where he was stepping was upon a different pole than on the telephone pole, and that these facts preclude plaintiff's recovery by showing him to have been guilty of such contributory negligence as would render him and not the defendant responsible for the injuries, and also from the further fact that it appears from the answers to questions Nos. 18, 20, and 21 that there were other methods which plaintiff could have adopted to have reached the east side of the telephone pole without subjecting himself to the danger involved by coming in contact with, the dangerous wire. Contributory negligence is nothing more nor less than negligence on the part of the person injured, and the rules of law applicable to the negligence of a defendant are applicable thereto. *Pitman v. City of El Reno*, 2 Okla. 414. Negligence, as defined by section 2830, Comp. Laws of Okla. 1909, is as follows:

"The terms 'neglect,' 'negligence,' 'negligent,' and 'negligently,' when so employed, import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

So now we must consider the action of the plaintiff, and then say whether, in view of his situation and the situation of defendant's property, he so conducted himself as to import a want of such attention to the nature or probable consequences of his acts as a prudent man ordinarily bestows in acting in his own concerns.

While the general principles involved in negligence and contributory negligence are the same, their application in any case

must necessarily depend upon the facts of that identical case. From the conceded facts in this case, it appears that the plaintiff was an experienced man in the line of work in which he was engaged, but that he had never before the day of his injuries worked on this particular portion of his employer's plant. The poles of the telephone company and of the defendant occupied the same side of the alley, the wires of the latter company occupying and being strung on both, except at this point. The plaintiff had been warned to be careful of coming in contact with the wires of the defendant company and had made his way along the alley by walking on the wires of the telephone company. As he approached the poles at the outlet of the alley where the injuries occurred, the telephone pole being the larger and nearer, obscured his view of the pole of the defendant company, and although he might, on looking more carefully than he did, have learned differently, yet as he approached, there being nothing to warn him, he believed and thought he saw that the defendant's cross-arms were attached to the telephone pole, and never learned that there was any electric light pole there until after the accident. Now, when we take into consideration the facts as found by the jury and the undisputed evidence relative to the situation, can we say that we would hold that a verdict of a jury and judgment rendered by a trial court thereon would be without evidence tending reasonably to support it? And can we say that such a verdict should be set aside because of evidence of negligence on the part of plaintiff, in that his conduct imported a want of such attention to the nature or probable consequences of his acts as a prudent man ordinarily bestows in acting in his own concern? It was the duty of the electric light company to keep its wires at this place in such condition that they would be harmless to the contact of the employees of the telephone company, when passing back and forth over and near them in the performance of their duties. Joyce on Electric Law, sec. 667; *Newark Electric Light & Power Co. v. Garden, supra; Illingsworth v. Boston Electric*

*Light Co.,* 161 Mass. 583; *Knowlton v. Des Moines Edison Light Co., supra.* And, in the absence of appearances showing that the insulation was defective, such employees had a right to assume that the company had discharged this duty. Croswell on the Law Relating to Electricity, sec. 256; *Clements et ux. v. Louisiana Electric Light Co., supra.* In weighing plaintiff's acts, the situation as it presented itself to him must be considered, and from this the conclusion drawn. Within this rule we do not believe it can be held that plaintiff, working in the surroundings where he was placed, in view of the situation of the poles and the usage of both companies, and acting without notice under the reasonable belief that he was upon one of the poles and cross-arms of the telephone company, and not the electric light company, could be held guilty of subjecting himself to a known danger; or indifferent to the probable consequences of his acts. Counsel, however, contend that, in view of the fact that plaintiff had been warned of the danger of coming in contact with defendant's wires, a high burden and duty was placed upon him, which was violated by his failure to observe that he was stepping upon the electric light pole, and that this was negligence of such a character as would preclude his recovery. The same insistence was made in the case of *Clements et ux. v. Louisiana Electric Light Co., supra.* In the discussion of the case, the court says:

"But it is urged that Clements was cautioned to keep away from the wires by his employer, Brady, and his failure to do so was gross carelessness on his part. The evidence on this point is as follows: 'Q. Did you call Clement's attention to the wires? A. No, sir; I cautioned him to be careful of the wires. Every man who goes over a roof must keep away from the wires. Q. It is the business of a man who goes over a roof to keep away from them? A. Yes, sir. Q. Did he understand that business? A. Yes, sir. Q. Did you caution him that morning to keep away from the wires? A. Yes, sir.' Clements' attention was not directed to any particular danger from the wires. No apparent defect was pointed out to him. The admonition to him was only of a danger which he knew to exist, according to the statement of Brady, before he advised him to be cautious of going near the

wires, or to keep away from them. There was only that instinctive dread of danger which overtakes one when he approaches a railroad track. The track in itself is not dangerous, and is only made so by the passage of a train of cars over it. They announce their approach, and hence a person, before he attempts to cross the track, must exercise great caution, stop and listen, and look up and down the track. Having done this, if a train approaches silently, without the accustomed signal, and injures him, he would be entitled to recover damages for the injury. *Curley v. Railroad Co.,* 40 An. 817; *Brown v. Railroad Co.,* 42 An. 350. The electric wires gave no signal of danger. Listening would not have revealed any danger. It is hidden and silent. But they are disarmed of danger, if properly insulated. By looking, one can see if there are evidences of insulation. If there are evidences of it, and no defects are visible after careful inspection, one whose employment brings him in close proximity to the wire, and which he has to pass, either over or under it, is not guilty of contributory negligence by coming in contact with it, unless he does it unnecessarily, and without proper precautions for his safety * * * Even in the presence of a known danger, to constitute contributory negligence, it must be shown that the plaintiff voluntarily and unnecessarily exposed himself to it, unless it is of that character that the plaintiff must assume the risk from the very nature of the danger to which he is exposed."

But it is insisted that, in view of the fact that plaintiff might have taken a different course to proceed from the west to the east side of the pole, his coming in contact with defendant's wires was a voluntary and unnecessary exposure on his part to danger which constituted contributory negligence. The same insistence was made in the case of *Fitzgerald v. Edison Electric Illum. Co.,* 200 Pa. St. 540. In the consideration of this case, the court said:

"The nonsuit, however, seems to have been entered on the ground of contributory negligence of the decedent. He was lawfully upon the roof in the exercise of his business. It is said that there was no evidence that it was necessary for him to go on the roof to do the painting. No such evidence was required. His convenience was reason enough. It was convenient for him to get at the cornice in that way and he had a right to do so. He

found the wires in his way, and proceeded to prop them up so that he could work under them. Whether the means he took were such as a prudent man should have taken is not so clear that it can be determined by the court. If the weight of the wire when it fell on him had been such as to knock him into the street, that would have been so clearly his own negligence that the court could have said so as matter of law. But though he was bound to know 'in general the dangerous nature of such wires, and to use proportionate care in interfering with them, he was also entitled to presume, from the general custom, that they were properly insulated, unless the defect in their covering was visible to such examination as he ought to have made. All these considerations entered into the question of his negligence, and made it one for the jury."

So, also, in the case of *McLaughlin v. Louisville Electric Light Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 612, 6 Am. Electl. Cas. 255, the plaintiff, who was a painter, thoughtlessly took hold of a wire of the defendant company. It was insisted in that case that plaintiff was guilty of contributory negligence, and the Court of Appeals of Kentucky, speaking to this point, said:

"The evidence in this case conduces to show that appellant was at work at his regular trade, and was where he had a right to be, and the joint of the wire, being apparently insulated, was to some extent, at least, a guaranty that there was no danger; but, independent of that fact, the situation of appellant, his work in hand, and the proximity of the wire, were such that he might without negligence have thoughtlessly taken hold of the wire, because he seemed to need support; and, besides, it was hardly to be expected that the current was on the wire at about noon, the wire being used wholly to supply incandescent lights or lamps. It seems clear to us that appellee should have been required to have had perfect protection on its wires at the point and place where appellant was injured. The fact that it was very expensive or inconvenient is no excuse for such failure. Very great care might be sufficient as to the wires at points remote from public passways, buildings or places where persons need not go for work or business; but the rule should be different as to points where people have the right to go for work, business or pleasure. At the latter points or places the insulation or protection should be made perfect and the utmost care used to keep it so."

It was also insisted that the decedent in the case of *Yazoo City v. Birchett, supra,* was guilty of contributory negligence by touching the guy wire of the defendant company. The facts out of which that case grew were that the decedent, who was an employee of the telephone company, ascended one of its poles in the performance of his duties. He was, at the time of his death, standing on an iron step on the telephone pole, to which was attached a small wire which was attached to a guy wire of a pole of the defendant company. This contact would have been entirely harmless except that the deceased, standing with one foot upon the wire, reached and grasped the guy wire of the defendant company, which was heavily charged with electricity. In the consideration of that case, the Supreme Court of Mississippi said:

"There was testimony going to show gross negligence on the part of the city, and testimony going to show that the deceased did no more than an ordinarily prudent man might do. When a city embarks in the management of any utility for profit, it is liable, or not liable, by precisely the same rules applicable to private corporations or individuals conducting such enterprises. * * * They (the jury) saw that telephone wires were not hurtful on contact; that Birchett went to correct a trouble with Birdsall's telephone connection; that he went directly to the telephone pole from which that connection came, and promptly ascended it, and was killed by a circuit formed by what should have been a cold and harmless guy wire with a high-voltage death-armed wire of the city, negligently put in circuit with it, which he did not see, or, if he did see, was not apparently dangerous where he was. * * * A process of elaborate inductive reasoning is not to be attributed to a man in the discharge of ordinary duty in an ordinarily harmless function. The attachment of the guy wire to the step of the telephone pole, of which all seem ignorant, may have been the fact without which the calamity would not have occurred; but, all the same, the negligent current on the guy wire was the proximate cause of the death, and the jury did not hold Birchett to a strict scrutiny of every step he took up the pole."

So, we must hold that had a jury upon this evidence returned a verdict in favor of plaintiff, it would not be set aside because of the contributory negligence of the defendant. We, therefore,

conclude that, the instructions which were given being erroneous, the error was not harmless, and, for and on account thereof, the order and judgment of the trial court denying the motion for new trial is set aside, and the case remanded to the district court of Oklahoma county, with instructions to grant plaintiff a new trial.

All the Justices concur.